CASE 6.—SUIT BY MAGGIE REED AND ANOTHER AGAINST
THE SINGER MANUFACTURING CO. TO SET ASIDE
A DEED.—February 4.

# Reid, &c. v. Singer M'fg. Co.

Appeal from Fulton Circuit Court.

R. J. Bugg, Circuit Judge.

Judgment for defendant, plaintiff appeals — Affirmed.

1.  Wills—Estates Created—Fee.—Where testator's will gave all
    his property to his wife to use and enjoy at her pleasure
    and with power to convey all his real estate, she became the
    unqualified owner of all his real estate.
2.  Estoppel—Permitting Expenditures.—Where a wife joined with
    a husband in a deed of his land. and for five years and
    seven months after his death knew that the land was in-
    creasing in value, and that the grantee was making valuable
    improvements, and she enjoyed the benefit of the purchase
    price, she was, after the lapse of such time, estopped from
    claiming the land as devisee of her husband, on the ground
    that he had lacked sufficient mental capacity to make the
    deed.
3.  Limitation of Actions—Fraud.—Ky. St. 1903, section 2515,
    provides that an action for relief on the ground of fraud or
    mistake must be brought within five years next after the
    cause of action accrues, and section 2519 provides that the
    cause of action shall not be deemed to have accrued until
    the discovery of the fraud or mistake, but that no such
    action shall be brought ten years after the time of making
    the contract or the perpetration of the fraud. Held, that an
    action for relief for fraud or mistake cannot be brought after
    the lapse of five years after the discovery of the fraud, and
    in no event after the lapse of ten years from the perpetration
    thereof.

Reid, &c. v. Singer M'f'g Co.

W. J. WEBB and MOORMAN & WARREN for appellants.

QUESTIONS MADE AND AUTHORITIES RELIED UPON.

We contend:

First: That the record in this case shows J. M. Reid to have been of unsound mind, non compos mentis, and a lunatic at the time of the execution of the deed.

Second: That appellee knew of his mental condition, at the time the deed was executed.

Third: That appellee was guilty of fraud, in procuring the execution of the deed and did not act in good faith.

Fourth: That an inadequtae consideration was paid for the land.

Fifth: That appellee can be placed in statu quo.

Sixth: That the decedent did not sign the deed.

Seventh: That the officer's certificate was obtained by fraud of the party benefited thereby.

Eighth: That a material change was made in the deed, by the appellee or its representative, without the consent of the maker, after its execution and delivery.

Ninth: That the proof shows the decedent and appellants did not know what land was being conveyed; that neither of them read the deed, nor was it read to either of them.

Tenth. That there is no proof of any acts on the part of the decedent, appellants or either of them, constituting an estoppel or ratification.

Eleventh: The proof shows over $18,000.00 worth of timber was removed from this land.

Twelfth: The proof shows the railroad on this land did not cost exceeding $8,000.00, and was built by appellee for their own convenience, and not as an improvement to the land.

2. The legal questions and authorities relied upon are as follows:

First: That the deed of a lunatic can be avoided upon proof of the lunacy, and knowledge of the party of the same, or fraud in procuring the making thereof, or that he did not act in good faith, or an adequate consideration was not paid, even if the parties cannot be placed in statu quo. (Smith's Committee v. Forsythe, 28 Ky. Law Rep., 1035; Coleman v. Frazer 3, Bush page 300; Rusk v. Fenton, 14 Bush, 490; Stevend v. Snoden, 7 Ky. Law Rep., 724.)

Second: That if the parties can be placed in statu quo, that the deed can be avoided even, if the parties did not have notice

of the unsoundness of mind, were free of fraud, paid an adequate consideration, and acted in good faith. In such cases, however, the parties must be placed in statu quo. (Same authorities as question one.)

Third: That the action may be maintained by the heirs and personal representative of the decedent. (Spicer v. Holbrook, 29 Ky. Law Rep., 865. 5th. J. J| Marshall 114.)

Fourth: A married woman is not bound by the warranties contained in the deed of her husband's land any further than to relinquish her inchoate right of dower therein, and is not estopped to assert an after required title to the lands. (Shelton v. Deering, 10 B. Monroe, 409; Falmouth v. Tibbett , 16 B. Monroe, 638; Hobbs v. King, 2 Met., 139; Sanford v. Kane, 8 L. R A. 724; Knight v. Thayer, 125 Mass., 25; Strawn v. Strawn, 50 Ill., 33; West Springs v. Collins 98 Fed., 934; Griffen v. Theffield, 38 Miss., 259; and 7 American Decisions 646; Adams v. Sounder Penn. 5 Atl., 182; Threefoot Bros. v. Hillman, Alabama 30 Southern 513; Webb v. Holt, Mich. 71 Northwestern 637; Sorrels v. Sorrels 31st Southeastern 119; Watkins v. Watkins, 22 L. R. A., 779.)

Fifth: The mere acquiescence or retention of the purchase money is not a ratification or affirmance of the deed, unless same continues the statutory period of limitation. (Logan v. Vanarsdall, 27 Ky. Law Rep., 822; Smith v. Forsythe, 28 Ky. Law Rep., 1034 and 1035; Spicer v. Holbrook, 29 Ky. Law Rep., 866; Hoffert v. Miller, 86 Ky., 572; Tyler on Infancy and Coverture, 84; Second Kent's Com., 238; Wheaton v. East, 5 Yerger, 41; Tucker v. Moreland, 10 Peters, 75; Jackson v. Carpenter, 11 Johnson, 542.)

Sixth: That the ten years statute of limitation applies to the right of action to set aside or cancel the deed of a lunatic. (Kentucky Statutes 2522; Hoffert v. Miller, 86 Ky., 572; Spicer v. Holbrook, 23 Ky. Law Rep., 1812. The same case reported in 29 Ky. Law Rep., 865-866; Combs v. Noble, 22 Ky. Law Rep., 756; Meriweather v. Herran, 8 B. Monroe, 162.)

Seventh: That a deed not signed by the maker is void, and the certificate of acknowledgment obtained by fraud of the party benefited thereby, renders the instrument void. (Abee v. Borgas, 65 S. W., (Tex.) 489; Helton v. Asher, &c., 103 Ky., 730.)

Eighth: A material change in the deed, after its delivery, by the grantee or his representative, without the consent of the maker thereof renders the deed void. (Wilson v. Bowen, 5 T. B. Monroe, 32; Letcher v. Bates, 6 J. J. Marshall, 525; Lee v. Alexander, 9 B. Monroe, 25; Phoenix Ins. Co. of Hartford v. McKenna, 18 Ky. Law Rep., 617.)

Ninth: Appellants can only be required to account for the

Reid, &c. v. Singer M'f'g Co.

actual consideration paid for the land, and improvements placed thereon less the value of the timber removed.

ROBBINS, THOMAS & TYLER for appellee.

### POINTS AND AUTHORITIES CITED.

1.  Construction of will.  (McCullough's Admr. v. Anderson, 90 Ky., 128; Petigo's Ex. v. Boots, 28 Ky. Law Reporter, 196; Dills v. Thomas, 19 Ky. Law Reporter, 1169. )

2.  Alleged change in deed.  (Bishop on Contracts, 758; 2 Cyc., 148; Duker v. Frantz, 7 Bush, 273; Mattingly v. Riley, 20 Ky. Law Rep., 1621; Sharpe v. Orme, 61 Ala., 263; Webb v. Mullins, 78 Ala., 111.)

3.  Estoppel and ratification.  (Gibson v. Western N. Y. & P. R. R. Co., 44 Amer. Sta. R., 586; Beach v. Modern Law of Contracts, vol. 2, sec. 1254; Schivers v. Simmons, 28 Am. Rep, 372; Cox v. Rogers, 77 Penn. St. Rep., 168 Liggon v. Green, 30 Am. Rep., 77; Moulton v. Camrous, 2 Exchequer, 502; Odam v. Riddick, 17 Am. St. Rep., 686; Allis v. Billings, 39 American Decisions, 744; Harvey v. Hobson 53, Maine, 453; Breckenridge v. Ormsby, 1 J. J. Marshall, 236; Rust v. Fenton, 14 Bush, 490; Connolly v. Brantley, 3 Bush, 702; Bohon v. Bohon, 78 Ky., 408; Cyc., 16 vol., 686-7-9; Perkins v. Coleman, 90 Ky., 611; Bull v. Sevier, 88 Ky., 515; Dulaney v. Figg, Ky. Law Rep., 678; Clay v. Chenault, 29 Ky. Law Rep., 1085.)

4.  Limitation.  (Kentucky Statutes, section 2515; Cotton v. Brown, 9 Kentucky Law Rep., 115; Frieschier v. Koehler, 7 Ky. Law Rep., 34; Woods v. James, 87 Ky., 517; Packard v. Valley Co., 16 Ky. Law Rep., 452; Wright v. Davis, 26 American State Reports, 349; Hawley v. Page, 10 American State Reports, 275; Francis v. Wallace, 77 Iowa, 373; Spicer v. Holbrook, 23 Ky. Law Rep., 1812.)

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

This suit was brought in the Fulton circuit court by appellant Maggie Reid and her daughter, Katie Reid, the wife and child and only heir at law of J. M. Reid, deceased, for the purpose of setting aside a deed which had been executed by J. M. Reid and

appellant Maggie Reid to the Singer Manufacturing Company on December 1, 1899, by which they conveyed to said company 2,880 acres of land in the Mississippi river bottom. The petition, in substance, alleges that at the time of the execution of this deed J. M. Reid was of unsound mind, and by reason thereof incompetent to convey, and that the Singer Manufacturing Company, knowing of his enfeebled mental condition, took advantage of him, and had him convey the land in question for a greatly inadequate price. In an amended petition it is pleaded that J. M. Reid never signed the deed or acknowledged it, and in a second amended petition it is charged that a material change was made in the deed without the knowledge or consent of J. M. Reid, and that by reason of this it was invalid. The answer traversed every material allegation of the petition and its two amendments, and pleaded affirmatively that by his last will J. M. Reid devised all of his property absolutely to his wife, Maggie Reid, and that his child, Katie Reid, had no interest whatever in his estate; that Maggie Reid, the wife, solicited the defendant company to purchase the land; that she actively participated in its sale, knew all about it, and that she was present when the negotiations were going on and at the time the deed was executed; that she advised with her attorney about the sale, and had him prepare the deed for the land, and that in the deed she personally warranted the title to the land; that she collected the purchase money, and placed it in the bank to the credit of her husband, and that as his sole devisee, under his will, she received this money and kept it for more than five years and seven months after her husband's death, without offering to return it; that the defendant company paid the full market

value for the land at that time ,and afterward put
valuable and lasting improvements on the land, to
wit, a railroad at a cost of over $40,000, and that the
plaintiff Maggie Reid did not seek to recover the
land until after its value had been greatly enhanced
by reason of changed conditions, the building of a
government levee, which protected the land from
overflow, and the materially advanced price of tim-
ber; that, by reason of her conduct and silence, she
not only ratified the sale, but is estopped to claim the
land.    Defendant also pleaded the five-year statute
of limitation.    The material allegations of the answer
were traversed, and upon issue thus joined much
proof was taken, the case finally submitted and heard,
and the chancellor adjudged that the plaintiffs were
not entitled to recover and their petition was dis-
missed.    Because of this ruling they appeal.

Before entering upon a consideration of the real
questions in issue in this case, it is necessary to
determine whether or not the appellant Katie Reid
has any interest whatever in the lands in controversy.
The petition alleges that she has.    The answer denies
this right.    Thus the issue is squarely and sharply
drawn.    If she had any interest, it must be through
and under the will of her father, which, stripped of
the merely formal portions thereof, is as follows:
"At my death I give and bequeath all of my property
of each and every description to my beloved wife,
Maggie Reid; and direct that she be permitted to
qualify as my executrix without bond or security,
she to have said property as her own to use and
enjoy as she pleases, and with power to convey all
or any part of my real estate that I may own in this
State or out of it."    We are of opinion that under
this will the wife, Maggie Reid, upon the death of

her husband, became the absolute unqualified owner of all of his estate of whatever kind or description, and that his daughter, Katie Reid, has no interest whatever in any part of his estate. We deem it unnecessary to elaborate upon this point for the reason the counsel for appellants both in their argument and brief practically admit that their client, Katie Reid, has no interest in the estate. This brings us to a consideration of the main question at issue involved in this case.

It appears from the record: That J. M. Reid had for many years prior to his death engaged in the lumber business, and that he had acquired title to some 8,000 or 10,000 acres of Mississippi river bottom land. A large part, if not all, of this land, was subject to annual overflows due to the rises in the river. That at times it was all the way from 4 to 20 feet under water. That it was land unfit for cultivation, and that, by reason of its swampy condition, it was difficult to remove the timber therefrom. That it had cost him from 50 cents to $1.50 per acre. That while it was owned by him he had cut and removed from it a good part of the higher-priced timber. That for some time prior to his death and to the execution of the deed in question he had been in poor health, and some months before his death had suffered a paralytic stroke, which for a time seriously disabled him, and from the effects of which he never fully recovered. That he was what might be termed "a hard drinker." That he drank so to excess that at times he had delirium tremens. That for some time before the date upon which the deed in question was executed he had been seeking a purchaser for the land in question, and had offered to take $1.50 per acre for it. An agent of appellee company learned that this land

was for sale, and, indeed, he testifies that he received word purporting to come from appellant Maggie Reid; that they would like to have him come and look at the land with a view of purchasing same, which he did. Whether he went on his own initiative or at the invitation of Maggie Reid, it matters not, the result of his investigation and inspection was that he bought same for his company, the appellee herein, at the agreed price of $5,600. The land was surveyed by the county surveyor. The deed was drawn by a prominent local attorney, and, according to his testimony, under the direction of appellant Maggie Reid. It was acknowledged by J. M. Reid and his wife before the county court clerk of Fulton county on December 1, 1899, and the entire purchase price therefor was paid in a draft which was delivered to J. M. Reid and his wife. This draft was by her deposited in bank to her husband's credit in due course of time, and the deed was lodged for record and recorded in the county court clerk's office of Fulton county. After the execution of this deed, J. M. Reid suffered a second paralytic stroke, and on the 19th of December following he was adjudged a lunatic. From this second stroke he did not recover, and died on the 17th of January, 1900.

There is some difference in the testimony of the witnesses as to when this second stroke occurred. Some place it upon a date earlier than the date of the execution of the deed, while others say it occured after the date thereof. We are strongly inclined to accept the latter view for the reason that appellant Maggie Reid, his wife, says that it did not occur until after the execution of this deed. There can be no question but that after the second stroke of paralysis he had no mind whatever. After the

first stroke, and before the second, there were unques-
tionably times when he was not rational, and it is
equally true that there were times when he under-
stood what he was about and was capable of trans-
acting business.   In September, 1899, it appears from
the record that he went to town and filed his answer
in a lawsuit which was pending in the circuit court
at that time, and conversed with certain of his friends
whom he met on that occasion in such a way as to
leave no question but that he was competent to trans-
act business.   It is true that there is proof to the
effect that at times during the summer and fall of
1899 he was, to all appearances, a raving manic.   As
before stated, he was addicted to the use of liquor,
and at times indulged in its use to such an extent as
to produce and bring on delirium tremens.   While in
this condition he was, of course, mentally incapable
of transacting business. . On the day upon which the
deed was executed there were present at the house,
as far as the record shows, at the time of its execu-
tion, J. M. Reid, his wife, Maggie Reid, B. W .McClure,
agent of the appellee company, the county court clerk,
S. D. Luten, and Mrs. Grouger, a tenant on his place.
Mr. Reid was in bed.   The county court clerk testifies
that he could not get Mr. Reid to sign the deed, that
he seemed to want something, and that thereupon Mc-
Clure said that he knew what he wanted, that it was
money he wanted, and that he could get him to sign
it; that he then went into an adjoining room, leaving
McClure and Reid in the room alone together; that,
when he returned to the room, the deed had been
signed, J. M. Reid still had the pen in his hand, and
handed this to him, and thereupon he took his ac-
knowledgment, and Maggie Reid, his wife, said it was
all right, and that she wanted it done.   Thereafter

the acknowledgment of appellant Maggie Reid was taken in due form, though the clerk says he did not read the deed over to her, for the reason that she said she understood it. Mrs. Grouger testified that she was in an adjoining room, and through the doorway saw Mr. McClure step behind Mr. Reid and sign the deed for him. Her statements, however, are flatly contradicted by McClure, and a number of witnesses are introduced by appellee, men of business and character and standing, who had seen J. M. Reid write and were familiar with his handwriting, and they testified that they believed the signature of J. M. Reid to the deed to be his true and genuine signature. We are of opinion that he in his own proper person signed this deed; but from all of the facts and circumstances concerning his mental condition upon that date we are left in doubt as to whether or not he had sufficient mind to know what he was doing. McClure testifies that he was competent, the county court clerk testifies that he had some doubt, but that appellant Maggie Reid assured him that her husband was all right. Appellants say that he was not competent and did not understand what he was doing, and appellant Maggie Reid further testifies that she did not know what she was signing or what land was being conveyed, though she admits that she did not make known this fact to either McClure or the clerk, or suggest to either one of them that her husband was not in a condition of mind to transact business. She knew, however, and must have known, that he was selling a considerable body of land, and that he was receiving $5,600 in cash for it. In spite of all of her protestations of ignorance concerning this sale and transfer of real estate, we are forced to the conclusion that she knew more than she is willing to admit

that she did.   McClure testifies that he received a
message, purporting to come from her, that they
wanted him to look at this land with a view of buying;
that he did so.   The county surveyor testifies that he
surveyed it under her order and direction, reported
the survey to her, and she paid him for it.   Mr. Tyler
says that he drew the deed for her, and talked the
matter over with her, and that she was anxious for
the trade to go through, and, when he told her that
he had heard that her husband was not all right, she
insisted that he was, and that she would make it all
right, and for that reason he told her he would put
her name in the body of the deed and make her war-
rant it; so that, in order to establish her want of
knowledge, she has to and does flatly contradict every
one who had any connection with the transaction.
She lived at home with her husband, was doubtless
more or less familiar with his affairs, more than likely
knew that he had offered this land for sale at $1.50
per acre, and, having received this offer, it is but
natural that she was anxious to have the trade con-
summated and the deal closed.   And while now, in her
petition, she alleges that the price paid was then
altogether inadequate, this charge is met in the proof
by the showing that she sold some 5,000 acres of like
land, which she took under the will of her husband
for a less price per acre than was paid for the land
in controversy.   The fact that she was in February
following willing to and did take less than $2 per
acre for other lands which she had inherited from
her husband, and which were as good as the lands
in question, is a circumstance tending strongly to
show that she regarded the price at which this land
was sold to appellee as an adequate price, and thus
color is lent to the statement made by her attorney,

Mr. Tyler, that, when she told him her husband was all right and that she would make it good, she knew full well what she was doing, and was satisfied with the trade, and wanted it to go through. On the question of the adequacy of the price, much proof has been taken. The decided weight of the testimony upon this point is to the effect that this land at the time when the deed was made was not worth in excess of $2 per acre, so that we may say that the price paid was the full, fair cash market value of the land at that time.

We come next to a consideration of the question as to whether or not the deed was changed. The pleadings charge that the word "east" was erased and the word "west" substituted, so that the record was made to read. "The west half of the. S. E. quarter. of section 21," instead of, "The east half of the S. E. quarter of section 21." The original deed shows no such change. In the record in the clerk's office it appears that the word "east" was written and a pen drawn through it, and the word "west" written above. This seems to have been a mere mistake of the copyist, and was corrected at the time by him; for the original deed, all in the handwriting of R. T. Tyler, shows that it was the west half that was conveyed. The record shows that J. M. Reid owned the west half, and never did own the east half of section 21; hence the claim and contention of appellants that the deed was changed, and therefore, the contract invalidated, is without merit. From the overwhelming weight of the evidence in this case, then, we are forced to the conclusion that appellant Maggie Reid fully understood the nature and extent of the trade which she and her husband made with the appellee company, through its agent, McClure, and that the deed was

signed by her husband in person and that there was
no alteration or change in it after it was delivered to
him, but that it represents the contract as made
between them. If J. M. Reid, when he signed the deed,
knew and understood the nature of the transaction,
there would be no need of a further consideration of
the case, but, if he did not have sufficient mental
capacity to know and understand the nature of the
transaction, what bearing does this fact have upon
the rights of appellant as sole devisee under his will?
May she, after the lapse of five years and seven
months from the date of the death of her husband,
set up the fact of his want of capacity, and by reason
thereof have said sale invalidated, the trade annulled,
and the deed canceled, or is she barred by the lapse
of time from asserting this right? Or because she
stood by and saw the trade consummated and the deed
delivered and the money paid over, and later saw the
lands improved by the purchaser while she enjoyed
the benefit of the use of the purchase price, is she
now estopped from seeking to have the contract re-
scinded and the deed canceled? It is most earnestly
insisted for appellants that at the date of the execu-
tion of this deed the appellant Maggie Ried was a
married woman, and therefore under the disability
of coverture, and that she could not and did not ratify
the voidable act of her husband in the execution of
this deed. Granting that this was true, the fact that
she was a married woman at the time the deed was
executed would afford her no relief, after the dis-
ability of coverture was removed. As is admirably
said by Mr. Beach on the Modern Law of Contracts
(volume 2, section 1254) : ''Disability, whether arising
from infancy or coverture or lunacy, is created for the
protection of the person on whom the disability rests.

'An infant can ratify after the proper age, a lunatic can ratify after the return of sanity, a married woman may ratify after the coverture terminates, but, as her disability results from the union of husband and wife, she may bind herself at any time during coverture by complying with the requisite legal formalities.'' At the date of her husband's death, on the 17th of January, 1900, all disability was removed. She knew then that she had joined her husband in the execution of a deed for which they had received $5,000. She knew that under the terms of her husband's will she was his sole beneficiary, as such she received this money, took possession of it, used and enjoyed it as she saw fit, and, even if her contention is true and she did not know the extent of the lands which they had conveyed to appellee, yet she knew that some lands had been conveyed to it. She lived in that locality. She knew and was bound to know that appellee was placing improvements upon this land, and that the government was constructing a dyke to prevent the overflow from the river, and thereby render this land suitable for farming purposes; that the citizens owning property in that locality were raising money and contributing same to a general fund for the purpose of erecting this dyke or levee, and yet, in the possession of all of this knowledge, she said nothing, she made no complaint until this vast public improvement had been practically completed, and until appellee had expended thousands of dollars in improving this property. She saw this property increase in value until, at the time she instituted her suit, it was worth from $12 to $20 per acre, and not until then was she heard to complain that the deed in question had been procured through fraudulent or unfair means, or that the price paid

was inadequate. She should have spoken sooner. She should not have waited until conditions changed and until these improvements had been made; but should have embraced the first opportunity presented to her to repudiate this sale, and demand the cancellation of the deed. Instead of doing so, we find her seeking for purchasers for the remainder of her property of the same kind, and selling it at less than $2 per acre. These acts on her part tend most strongly to show that at that time she was perfectly satisfied with the sale which she and her husband had made, and but for the fact that times have changed and the improvements which have been made on the river front in that locality have greatly enhanced the value of these lands she would have made no complaint.

In the case of Cox v. Rogers, 77 Pa. 168, upon the death of her husband, a married woman had taken a legacy in lieu of dower, and it was held that she had ratified such election and was estopped from claiming an interest in the land after the lapse of five years; the court saying: "I know of no case in which it has been held that a lapse of time of more than five years after acts done which are usually treated as indicating an election will not be binding upon a widow and prevent her denial of an election, though the acts were done in ignorance of her rights." And in the case of Riggan v. Green, 80 N. C. 236, 30 Am. Rep. 77, the Supreme Court of North Carolina held that a deed executed by a lunatic should not be set aside, where the grantee could not be put in statu quo, or where the benefit received by the grantor is actual and of a durable character, and that the heirs could not recover the land upon the ground of the incapacity of their ancestor to make a deed where it appeared that

the purchaser paid full value, and the purchase money was used for the benefit of himself and family, and in discussing the case the court announced, with approval, the law as laid down by Blackstone, in volume 2, p. 295, as to the effect that should be given the deed of a lunatic: "Idiots and persons of nonsane memory, infants, and persons under duress are not totally disabled to convey or purchase, but sub modo only, for their conveyances and purchases are not actually void. Sanity is to be presumed until the contrary be proved, and therefore, by the common law, a deed made by a person non compos mentis is voidable only, and not void." The principles of the common law have been established and adopted by courts of last resort generally. In case of Odom v. Riddick, 104 N. C. 515, 10 S. E. 609, 7 L. R. A. 118, 17 Am. St. Rep. 686, the court said: "The great teachers of English law say that persons of nonsane memory are not totally disabled to convey or purchase, but only sub modo. Their conveyances are voidable, but not void. Story's Equity Jurisprudence, section 227, says: "The ground upon which courts of equity now interfere to set aside the contracts and other acts, however solemn, of persons who are idiots, lunatics and other persons non compos mentis, is fraud.' " He then cites the rule as stated by Mr. Story in section 228: "If a purchase is made in good faith, without any knowledge of the incapacity, and no advantage had been taken of the party, courts of equity will not interfere to set aside the contract if injustice will be done to the other side, and the parties cannot be placed in statu quo." And, concluding, says: "It is clear from these authorities that the conveyances of an insane person not previously declared insane are voidable merely, and not void, that the right to

vol. 128—5

set them aside is based upon the ground of fraud, and that the court will not usually interfere, unless there has been fraud and a knowledge of the insanity by the other party, and will then place the parties in statu quo. When, therefore, as in this case, the grantee knew of the mental incapacity of the grantor, but it is found as a fact that no fraud was practiced upon Oliver Odom or undue influence exercised to induce him to make the deed, that he acted under the advice of his lawyer who had been his counsel for years, that the price paid was a full and fair consideration for the land, and that the grantor was benefited by the making of the deed, a court of equity will not set aside such conveyance." In the case of Hovey v. Hobson, 53 Me. 453, 89 Am. Dec. 705, it was held that, if the grantor in the deed continued insane until his death, his heirs may ratify the contract after his death, and the same acts which would amount to a ratification on the part of an insane person, after being restored, would amount to a ratification on the part of his heirs. In the case of Breckinrdige's Heirs v. Ormsby, 1 J. J. Marsh. 236, 19 Am. Dec. 71, decided in 1829, this court held, Judge Robertson writing the opinion, that the deed of a lunatic had the same effect as the deed of an infant, and was vot void, but voidable merely. The same rule was adhered to in the case of Rusk v. Fenton, 14 Bush, 490, 29 Am. Rep. 413. In that case Rusk had sold and delivered to Fenton a steamboat for about $12,000. Fenton and his wife had conveyed to Rusk a farm of about 80 acres of land in Pendleton county, valued at $8,000, subject to a mortgage for $2,250, as part payment for the boat. After the boat was delivered to Fenton he took it to Madison, Ind., and had it repaired at a cost of something over $3,000. He paid $1,000 of this

sum.    After the boat was repaired, it was run in charge of Fenton, who was accompanied by his wife, to Louisville, Madison, and return to Covington. It appears that the wife paid $1,000 on the repairs. Shortly after this purchase and sale, Fenton had a paralytic stroke, and on the 17th of June following was adjudged a lunatic. On the 24th of June his wife filed a petition in equity, seeking to have the conveyance of the farm set aside, on the ground that at the time of the purchase of the steamboat and the making of the conveyance her husband was insane, and had been partially so for some three years or more, and that she had been induced to join in the conveyance from fear of violence to her person by her husband. At the time this suit was filed the steamboat had been seized by the materialmen, and was held for the money due for the repairs. It was sold for more than $5,200. It does not appear what became of the proceeds of the sale after the payment of the lien debts. While this litigation was pending, Fenton died, and the suit was prosecuted by his widow, administratrix, in her own right. The lower court adjudged the conveyance of land by Fenton and his wife to be void, and directed Rusk to restore the possession of the land to her. In reviewing this case upon appeal here this court said: "A consideration of the following propositions will relieve us of the necessity of making a more detailed statement of the evidence as to sanity or insanity: First. If appellant was an innocent purchaser without knowledge of Fenton's insanity, and the parties cannot be placed in statu quo, should the court set aside the conveyance at the suit of Fenton, if living, or, he being dead, at the suit of his personal representative? Secondly. Will the conduct of appellee, knowing of the insanity

of her husband, in concealing the knowledge from appellant, and actively manifesting a cheerful acquiescence in and approval of the purchase for two months, and until it was too late for appellant to rescind the contract, operate to estop her from making any complaint in her own right? The weight of modern authority is to the effect that the contract of a lunatic, particularly if made before inquest, like that of an infant, is voidable only. Both from authority and reason the first inquiry must be answered in the negative. Chitty on Contracts, 191; Moulton v. Cameron, Exch.; 1 Parsons on Contracts, 386; 1 Hilliard on Contracts, 310; Metcalf on Contracts, 80 81; Wilder v. Weakley's Estate, 34 Ind. 181; Musselman v. Cravens, 47 Ind. 1. Upon the second question it is equally clear that the appellee is estopped to claim anything in her own right. The disabilities of coverture will not be permitted to be invoked and used as a cloak for fraud. Davis v. Tingle, 8 B. Mon. 542; Bailey v. Barnberger, 11 B. Mon. 115; Wright v. Arnold, 14 B. Mon. 638, 61 Am. Dec 172; Connolly v. Branstler, 3 Bush, 702, 96 Am. Dec. 278.'' The case from which we have just quoted is very much like the case at bar. In this case the wife knew of the disability of her husband, and concealed this fact from McClure, the agent who was attempting to purchase this land. Not only did she conceal this fact from him, but she encouraged him in the purchase of the land, and aided and assisted in every way that she could to bring his efforts to a successful conclusion, and, having succeeded in this she received the money and used and enjoyed it for more than five years, during which time conditions have changed. Appellee has placed upon the property in question improvements, so that

it would be impossible, even if the contract was rescinded, to place him in statu quo.  By her own acquiescence in the acts of her husband in selling this land the law presumes that she was satisfied with the terms of the sale, and she has by her silence adopted and ratified the acts of her husband in making same.  It is now too late for her to complain. She is estopped by her conduct from asserting claim or ownership over this land.  We do not decide the question as to whether or not she was bound by her warranty, for the reason that it is unnecessary.

We come lastly to a consideration of the plea of the five-year statute of limitation interposed by appellee.  It is insisted for appellant that this statute has no application, and she cites and relies upon the case of Spicer v. Holbrook, 66 S. W. 180, 23 Ky. Law Rep. 1812.  That case is not an authority upon the question here at issue, for the reason that this court held that that was not an ordinary equitable action brought to set aside a deed for fraud, and, upon a second appeal to this court, reported in 96 S. W. 571, 29 Ky. Law Rep. 865, this court said: "What is said in that opinion as to the effect of the deed made in 1883 is made upon the facts as they were presented to the court; it being there alleged that Mrs. Quisenberry was of unsound mind when that deed was made and continued so until her death. The language used in the opinion about the deed being void without a subsequent ratification either actual or constructive is based upon the allegations which then stood admitted upon the demurrer, that Mrs. Quisenberry remained insane until her death. The general rule is that the deed of a lunatic is like the deed of an infant, and is binding on him if not disaffirmed when his disability is removed." Section

2515 of the Kentucky Statutes of 1903 provides that an action for relief on the ground of fraud or mistake must be brought within five years next, after the cause of action accrues; and section 2519 provides that the cause of action shall not have been deemed to have accrued until the discovery of the fraud or mistake, but that no such action shall be brought 10 years after the time of making the contract or the perpetration of the fraud. These statutes have been repeatedly construed by our courts, and the rule is now well settled that an action for relief for fraud or mistake cannot be brought after the lapse of five years after the date of the discovery of the fraud, and, in no event, after the lapse of 10 years from the date of the perpetration thereof. As said by this court in the case of Brown v. Brown, 91 Ky. 639, 11 S. W. 4: "If the party who is injured by the fraud or mistake is apprised of it at the time it is perpetrated, he must bring his action within five years thereafter; but if he is not apprised of it at the time it is perpetrated, he must bring his action within five years after the discovery, but in no case can he bring his action after the lapse of ten years from the making of the contract or the perpetration of the fraud. * * * If more than five years have elapsed since the perpetration of the fraud or mistake, the plaintiff, in order to maintain his action, must allege' and prove that he discovered the fraud or mistake within five years next before bringing suit, and that he could not, with the use of reasonable diligence, have discovered it sooner. In the absence of these allegations, it will be presumed that the plaintiff was apprised of the fraud or mistake at the time of its perpetration." To the same effect are Cavanaugh v. Britt, 90 Ky. 273, 13 S. W. 922, 12 Ky. Law Rep.

204; Fritschler v. Koehler, 83 Ky. 78, 7 Ky. Law Rep. 34; Dorsey v. Phillips, 84 Ky. 420, 8 Ky. Law Rep. 405, 1 S. W. 667; Green v. Salmon, 63 S. W. 270, 23 Ky. Law Rep. 517. And any expressions in the case of Spicer v. Holbrook, 66 S. W. 180, 23 Ky. Law Rep. 1812, seeming to hold a contrary view and out of harmony with the doctrine as above announced, were disregarded on the second appeal. Applying the rule as above announced to the case at bar, we are of opinion that appellant knew on December 1, 1899, the date upon which the deed in question was executed, that a fraud had been perpetrated upon her husband (if there was any fraud), and this knowl-, edge on her part was carried over until the date of the death of her husband on the 17th of January, 1900, when the disability of coverture was removed, and, without expressing an opinion as to whether or not the cause of action accrued to her sooner than that date, it certainly did accrue to her on that date. She having permitted more than five years to run from that time before she instituted her suit, she is barred by the statute of limitation, and the plea of the statute is a good defense to any effort on her part to set aside or have canceled the deed.

For the reasons given, the judgment of the lower court is affirmed.