# Jones et al. v. Fiscal Court of Fulton County et al.

(Decided Nov. 29, 1938.)

H. H. LOVETT for appellants.

WOODARD TIPTON, JR. and W. B. AMBERG for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

This is an appeal from a judgment of the Fulton circuit court holding valid $70,000 of bonds proposed to be issued by Fulton county to refund certain bonds now outstanding and to pay off the accumulated interest thereon.

In 1922 Fulton county had a floating indebtedness of $135,000, and, at the November election in that year, the following question was submitted to the voters:

"Are you in favor of issuing not exceeding $100,000 in bonds for the purpose of funding that amount of Fulton county's indebtedness as is now represented by outstanding warrants issued by the fiscal court of said county?"

More than two-thirds of the voters who voted on the proposition voted "yes," and shortly after the election

the fiscal court issued $100,000 of bonds bearing interest at the rate of 5% per annum. $40,000 of the bonds have been retired, and bonds in the principal amount of $60,000 are still outstanding. No bonds have been retired since 1932, and very little interest has been paid on the oustanding bonds during the last six years. The interest now due and unpaid amounts to approximately $15,000. The fiscal court of Fulton county and the appellant Hunter Jones entered into an agreement whereby all of said indebtedness, amounting to approximately $75,000, is to be taken up and retired in exchange for $70,000 of refunding bonds bearing interest at the rate of 2% per annum, payable semiannually. Jones refused to accept the refunding bonds until their validity had been judicially determined, and the fiscal court of Fulton county brought this suit for the purpose of having approved the issuance of $70,000 2% refunding bonds to retire $60,000 principal amount 5% funding bonds, together with $15,125, matured interest thereon. B. G. Hale, a citizen and taxpayer of Fulton County, was made a defendant, and he was permitted to defend for and on behalf of all other citizens and taxpayers of the county.

The bonds issued in 1922 to retire the floating indebtedness of the county were authorized by the consent of two-thirds of the voters of the county at an election duly held as provided by law. They were legally issued, and it is conceded that the bonds now outstanding, amounting to $60,000, can be refunded without first submitting the matter to a vote of the people. Such procedure is authorized by section 158 of the Constitution. Welch v. City of Nicholasville, 225 Ky. 312, 8 S. W. (2d) 400; Gaulbert v. City of Louisville, 97 S. W. 342, 30 Ky. Law Rep. 50. The validity of the proposed bonds is questioned in two respects: (1) Can the matured interest on the existing bonds, to the extent of $10,000, be included in the principal amount of the refunding bonds; and (2) is the issuance of bonds to refund a bonded indebtedness subject to the provisions of sections 186c-6, 186c-7 of the Kentucky Statutes, to the extent that the validity of the original indebtedness paid from the proceeds of the funding bonds must be alleged and proven?

The proof shows that the assessed valuation of property in Fulton county subject to taxation for county purposes for the year 1921 was more than $11,000,000.

The assessed valuation of property in the county has gradually decreased until it now approximates $9,000,-000. Since the bonds were issued which the county now proposes to refund, the indebtedness of the county has steadily increased. In 1924 road and bridge bonds were issued. $258,000 of these are still outstanding. In 1928, $115,000 of bonds were issued to fund a floating indebtedness of the county, and the county now has $73,000 floating indebtedness represented by warrants. The road and bridge bonds do not come within the 2% debt limitation provided for by section 158 of the Constitution, but, with them eliminated, it will be seen that the indebtedness of the county far exceeds the limitation prescribed by that section of the Constitution. The bonds issued in 1928 to fund a floating indebtedness and the bonds involved on this appeal together amount to approximately 2% of the value of the taxable property in the county. However, neither the fact that the assessed valuation of property has decreased nor that subsequent debts have been created renders the bonds issued in 1922 or the interest due thereon invalid. The interest is part of the debt, and just as valid as the principal. If any of the indebtedness is invalid because in violation of section 158 of the Constitution, it is indebtedness created for nongovernmental expenses after the debt limitation had been reached and not valid bonds theretofore issued or interest thereon. The matured interest on the bonds is at least a valid floating indebtedness, and can be funded. Johnson v. Middleton, 243 Ky. 251, 47 S. W. (2d) 1030, and cases therein cited.

It is suggested that under sections 186c-6, 186c-7, Kentucky Statutes, the county was required to allege and prove that each and every item of indebtedness paid off out of the proceeds of the bonds issued in 1922 was valid. If these sections have any application to the present case, their provisions were satisfied when the validity of the bonds sought to be refunded was established, and, as heretofore stated, they are valid because they were authorized by a vote of the people. The original indebtedness, even if invalid when created, was validated when bonds were voted to fund it. It is our conclusion that the proposed issue of refunding bonds will be a binding and valid obligation of the county.

It may not be inappropriate to say that this record is another illustration of the inefficient management of the fiscal affairs of the counties of this state by their

622

fiscal courts. Fulton county, with a tax assessment of $9,000,000, has a bonded indebtedness of $433,000 and a floating indebtedness of nearly $100,000, with the result that interest charges consume a large portion of its revenues. It is true that $258,000 of the indebtedness is represented by road and bridge bonds voted by the people for which the fiscal court is not responsible, but it is responsible for the remainder of the indebtedness, all of which resulted from expenditures by the various fiscal courts in excess of the county's revenues provided by them. During the last twenty years the fiscal court apparently has spent $263,000 in excess of the revenues of the county. Such improvident management of the fiscal affairs of the county must result eventually in bankruptcy. Recognizing the chaotic financial condition of many counties in the state, the General Assembly, at the extraordinary session begun on March 2, 1938, passed an act authorizing optional reorganization of county financial administration, and making provision for adequate county debt administration and for state supervision thereof. Chapter 31, Acts First Extra Session of the General Assembly, 1938. This act is especially pertinent to the situation now existing in Fulton county.

What has been said is not intended as a criticism of the present fiscal court. It appears that all of the indebtedness was created prior to 1934, and since then those in charge of the fiscal affairs of the county have succeeded in reducing interest charges materially and keeping expenses within current revenues. The arrangement to refund the outstanding bonds issued in 1922 is good business practice, and is evidence of the present fiscal court's endeavor to put the county on a sound financial basis.

The judgment is affirmed.