## County Debt Commission et al. v. Morgan County et al.

## Same v. Ballard County et al.

June 23, 1939.

William B. Ardery, Judge.

Hubert Meredith, Attorney General, and A. E. Funk, Assistant Attorney General, for appellants.

Alfred Holman and Earl S. Wilson for appellees.

OPINION OF THE COURT BY SIMS, COMMISSIONER—
Reversing.

These two cases were heard together in the lower court and both will be disposed of on this appeal in one opinion. The appeals are from judgments of the Franklin Circuit Court holding unconstitutional the "County Debt Act," being section 938q-1 et seq., Kentucky Statutes, 1938 Supplement, which will hereinafter be referred to as the "Act."

On January 2, 1932, the United States District Court for the Eastern District of Kentucky rendered judgment against Morgan County in favor of the State Bank of New York et al. on two notes executed to the plaintiffs by Morgan County, which represented money plaintiffs had loaned the county to be used in the construction of roads and bridges. The first note was executed in 1921 for $30,000 and the second in 1922 for $20,000. As no interest had been paid on either of them, the judgment rendered against the county was for the sum of $78,880. The judgment has never been appealed

and is now in full force and effect which, with accrued interest, now amounts to $114,000. W. C. Thornburgh Company and Charles A. Hinch & Company entered into a contract with Morgan County whereby it agreed to issue them 4% road and bridge bonds in the sum of $112,500, maturing over a term of thirty-five years, in consideration of them satisfying the above mentioned judgment, and the further consideration of them surrendering to the county all of its floating indebtedness that accrued prior to July 1, 1934, which amounts to about $68,000.

In 1929 the Ballard Circuit Court rendered judgment against Ballard County in favor of the Citizens State Bank of Wickliffe and Russell Grader Manufacturing Company, aggregating $29,000 with interest and cost, for an indebtedness the county had incurred in building roads and bridges. This judgment was not appealed but was satisfied in 1929 with $29,000 road and bridge funding 5¾% bonds issued by the county July 1, 1929, which are still outstanding and $10,000 of which mature July 1, 1939. The county made another issue on July 1, 1929, of $15,000 road and bridge 5¾% funding bonds, Series A, which matures July 1, 1939. These two issues aggregating $44,000 were included in the balance of $125,000 of the $300,000 road and bridge bond issue voted by the people of the county in 1916, and referred to in Shearin v. Ballard County, 267 Ky. 737, 102 S. W. (2d) 292. Thornburgh & Company and Hinch & Company entered into a contract with the county whereby they agreed to purchase $25,000 road and bridge bonds bearing 4½% interest which the county proposed to issue to take up the $25,000 road and bridge bonds bearing 5¾% interest and maturing July 1, 1939.

Morgan County and Ballard County in complying with their contracts to issue the above mentioned bonds to the proposed purchasers proceeded under the County Debt Act, the fourth section of which in effect contains the following provisions: No county may contract an indebtedness in excess of one half of 1% of the value of its taxable property therein, as determined by the next preceding assessment, and issue valid bonds in payment thereof, without first obtaining the written approval of the State Local Finance Officer, who shall conduct a hearing after at least two weeks' notice to the county judge. A record shall be made of the hearing, and the State Local Finance Officer shall withhold his

approval of the bonds, unless he believes there is a reasonable expectation that the county's financial condition will permit it to meet the interest and maturities without seriously restricting other expenditures of the county, and that the issuing of the bonds will best serve both the county and its creditors; that any party having any material interest shall have an opportunity to be heard. An appeal may be taken within fifteen days from the ruling of the State Local Finance Officer to the County Debt Commission; and due provision is made for an appeal from the County Debt Commission's ruling to the Franklin Circuit Court and from there to this court. The Commission shall not pass upon the question until the attorney general has certified to it that the proposed bond issue is valid. The findings of fact by the Commission shall be final if supported by any substantial evidence, and in case no appeal is taken from an approval of the bond issue by the State Local Finance Officer, or the Commission, the decision as to the legality of such issue shall be "res adjudicata" in any subsequent case where such question is raised.

In each case the county made application for the approval of the proposed bond issue to the State Local Finance Officer, who, after giving the required notice, conducted the hearings. In the Ballard County case, W. T. Wallace, a taxpayer, filed an answer attacking the $29,000 issue and the $15,000 issue, alleging these amounts were in excess of the revenues which could have been reasonably anticipated for the years during which the debts were incurred which were funded by these two issues; that the judgment rendered against the county in 1929 was obtained by fraud and is void. In the Morgan County case, a taxpayer, Ben F. Nickell, filed no answer but did file an "appeal from the decision of the State Local Finance Officer" with the County Debt Commission, alleging the Act was unconstitutional because it destroyed the county's right of self government under Section 144 of the Kentucky Constitution and vested such right in the State Local Finance Officer and in the County Debt Commission; that the judgment of the United States District Court of the Eastern District of Kentucky is against the weight of the evidence; that the testimony offered before the State Local Finance Officer showed the proposed bond issue of Morgan County of $112,500 is in excess of the 2% limitation of Section 158 of the Constitution. The State Local Finance Officer in

each case approved the proposed bond issues, and on the appeals of the taxpayers in each instance to the County Debt Commission the attorney general certified to the Commission the proposed bond issue was valid, in his judgment; and the Commission, on the basis of the record prepared by the State Local Finance Officer, likewise approved the proposed issues. In each case the taxpayer took an appeal to the Franklin Circuit Court which held the Act unconstitutional, and the County Debt Commission prosecutes these appeals.

The following questions are presented on the appeals of the two cases: (1) Does the 2% limitation in Section 158 apply where a proposed bond issue is to fund a debt which is in the form of a judgment, and which judgment has never been appealed, and where the appeal from such judgment is now barred by the statutes of limitation? (2) Is the Act unconstitutional because it forbids the county to incur an indebtedness in excess of one half of 1% of the taxable property without the approval of the County Debt Commission, when Section 158 permits a county to incur an indebtedness not exceeding 2% of its taxable property? (3) Has the Legislature usurped the powers of the fiscal court and thereby contravened Section 144 of the Constitution? (4) Is the notice to the county judge of the hearing sufficient notice to the taxpayers of the county? (5) Does the Act give the County Debt Commission judicial powers when it allows it to pass upon the validity of bond issues, and in providing its findings of fact shall be final if supported by any substantial evidence, and in providing where there is no appeal, the decision of the Commission shall be "res adjudicata"?

The 2% limitation under Section 158 does not apply in the Ballard County case, since the county is attempting to refund bonds which had been authorized by a vote of the people under Section 157a, providing a limitation of 5% of the value of taxable property. Shearin v. Ballard County, 267 Ky. 737, 103 S. W. (2d) 292. The floating indebtedness of $29,000 was adjudged by the Ballard Circuit Court in 1929 to be a valid debt of the county, which judgment was not appealed and as it long since has become final, it established this $29,000 debt as a valid indebtedness of the county. Stratton v. Jessamine County, 260 Ky. 754, 86 S. W. (2d) 984; Randolph v. Shelby County, 259 Ky. 79, 82 S. W. (2d) 188. This judgment is not subject to collateral attack, Logs-

don v. Logsdon, 204 Ky. 104, 263 S. W. 728, nor is it subject to a direct attack at this late date. Section 2515, Kentucky Statutes, provides an action for fraud must be brought within five years, and Section 2519 provides an action for fraud does not accrue until the fraud is discovered, but in no event shall such action be brought as much as ten years after the perpetration of the fraud. An inspection of the records of the Ballard Circuit Court would have disclosed any fraud which might have been connected with this judgment, and in Elkhorn Coal Corporation v. Hite, 225 Ky. 735, 9 S. W. (2d) 1083, it was held that where an inspection of a public record would have disclosed fraud, the action for relief against the fraud must be brought within five years of its perpetration. Also see Brown v. Brown, 91 Ky. 639, 11 S. W. 4, 12 Ky. Law Rep. 280; Reid v. Singer Manufacturing Company, 128 Ky. 50, 107 S. W. 310, which construe sections 2515 and 2519.

The Morgan County case is to fund a floating indebtedness of $112,500, which sum exceeded 2% of the 1937 assessment of $3,647,092, upon which the 1938 taxes were collected. We must determine whether or not the 2% limitation of Section 158 applies to this floating indebtedness; if it does, then the proposed issue of Morgan County is invalid. The judgment of the federal court was rendered January 2, 1932, and has not been appealed from and no appeal can now be prosecuted. That judgment held the note sued on, and the interest up to date the judgment was rendered, was a valid indebtedness of Morgan County, and as that judgment has long since become final, it established these notes, and the interest thereon, as a valid indebtedness of the county. Stratton v. Jessamine County, supra; Randolph v. Shelby County, supra. We held in Jones v. Fiscal Court of Fulton County, 275 Ky. 619, 122 S. W. (2d) 510, that the interest is a part of the debt and is just as valid as is the principal, therefore, the large amount of interest that has accrued upon this $50,000 indebtedness is a part of the debt.

This Act in forbidding the county to incur an indebtedness in excess of one half of 1% of the assessed valuation without the approval of the County Debt Commission does not contravene Section 158, which permits an indebtedness not exceeding 2% of the assessed valuation. Section 158 fixes the limit beyond which the Legislature cannot go, but the section cannot be construed as

preventing the Legislature from fixing a lower limit. In Clere v. Board of Education of City of Ashland, 211 Ky. 130, 277 S. W. 335, it was contended that an Act of the Legislature fixing the limit of indebtedness for school purposes in second class cities at 2% of the taxable property was in conflict with Section 158, which provided the limit should not exceed 10% thereof. We there held the provision in Section 158 to be a limitation upon the legislative power and not a grant of power to the city.

The contention that the Act supplants the fiscal court with the County Debt Commission, therefore, it conflicts with Section 144 of the Constitution, has no reason or authority to support it. Besides creating the County Debt Commission, the Act establishes the "County Road and Bridge Revolving Fund," Kentucky Statutes Supplement 1938, Section 938q-7, not to exceed $500,000, which may be used for the purpose of purchasing road and bridge bonds from counties, and from which loans may be made to counties for the redemption of such bonds upon the approval of the State Local Finance Officer. The counties are required to report to such officers the amount of such outstanding bonds and of unfunded debts, and the condition of their sinking funds. The Act by no means supplants the fiscal court with the County Debt Commission, but it provides a way in which the County Debt Commission may be of much assistance to fiscal courts in solving the financial problems of counties. All persons having any knowledge of county affairs must recognize that many counties of the state are in a deplorable financial condition due to improvident spending during the last three decades and due to the unbusiness-like manner in which their fiscal affairs have been handled. The First Extra Session of the 1938 General Assembly passed this Act, chapter 31, giving counties the privileges of reorganizing their finances with state aid and under state supervision with the hope that the counties might be rescued from the plight their own improvidence had visited upon them. It had almost become a custom for suits to be filed where those attacking the validity of the indebtedness of a county desired the indebtedness upheld, and the attack thereon was a mere sham. Oftentimes, the allegations of their pleadings and their proof were so made as to present the appearance that the indebtedness was valid when in reality it was not. This was one of the abuses

which the General Assembly sought to stop by this Act. If the State Local Finance Officer will delve deep into the records of counties desiring to fund or refund their indebtedness, and have a complete and accurate report made of the hearings, such abuses will be stopped and the valid indebtedness of counties can be separated from debts which are invalid. It takes no great imagination to see the benefit that may come to counties through this Act if the State Local Finance Officer is vigorous and painstaking in his work. But we cannot refrain from remarking that the records before us show the cases were hurriedly prepared and were gotten up in none too good form, and the chancellor had but scant time to consider them, and but little energy was expended by counsel in preparing their briefs.

The two weeks' notice required by the Act to be given the county judge of the hearing is sufficient notice to the taxpayers of the county. We so state on the authority of Section 51 of the Civil Code of Practice, which provides that in an action against the county summons must be served on the presiding judge of the county court.

The Act confers no judicial power on the County Debt Commission by allowing it to pass upon the validity of bond issues and by providing its findings of fact shall be final if supported by substantial evidence. This same question was raised against the constitutionality of the Workmen's Compensation Act in Greene v. Caldwell et al., 170 Ky. 571, 186 S. W. 648, Ann. Cas. 1918B, 604, and it was there held the Workmen's Compensation Board was not a court. In the recent case of Sears v. Elcomb Coal Company, 253 Ky. 279, 69 S. W. (2d). 382, Judge Carroll's opinion in the Greene case was quoted with approval on this very point. Like this Act, the Workmen's Compensation Act provided for an appeal to the circuit court and then to this court. Under the provisions of Section 4935, Kentucky Statutes (part of the Workmen's Compensation Act), neither the circuit court nor this court can reverse the findings of fact of the Board if there is any substantial competent evidence in support thereof. Avery & Sons v. Carter, 205 Ky. 548, 266 S. W. 50. The fact that the General Assembly inadvertently used the term "res adjudicata" in the Act when it said, "in case no appeal is taken * * * the decision as to the legality of such bond issue shall be res adjudicata in any subsequent case or cases raising such

484

question of legality," Kentucky Statutes Supplement 1938, Section 938q-4, does not convert the State Local Finance Officer or the County Debt Commission into a court. By "res adjudicata" the General Assembly evidently meant "final." It is a cardinal rule of statutory construction that where words are susceptible of two meanings, the court will give them the meaning which will uphold the constitutionality of the legislative act.

Being of the opinion the Act violates no provision of the Constitution, the judgments are reversed.

Whole Court sitting.