CASE 53.—ACTION BY MAGGIE HAYS AGAINST B. F. MEYERS
    TO RESCIND AN ALLEGED FRAUDULENT CON-
    TRACT FOR THE SALE OF LAND.—January 31,
    1908.

## Hays v. Meyers.

Appeal from Metcalfe Circuit Court.

Judgment for plaintiff, defendant appeals.—Affirmed.

1.  Fraud—Sale of Real Estate—Infirmity in Title—Knowledge of
    Purchaser—Ignorance of Vendor.—A person may, in pur
    chasing property from another, use for his own advantage
    any superior knowledge he has of its value that has been
    properly and legitimately acquired, and is not under  any
    legal obligation to disclose to the person he is trading with
    the reasons that induce him to make the purchase, nor need
    he even disclose the knowledge he has concerning the cir-
    cumstances or conditions that may depreciate or enhance
    its value.
2.  Same—Purchaser—Failure to Disclose Knowledge—Duty to
    Speak.—When parties are dealing at arm's length, and there
    is no relation of trust or confidence between them and no
    representations made that would have a tendency to de-
    ceive or mislead, and no special circumstances imposing a
    duty to speak, mere silence  or failure  to disclose facts
    known to one of the parties, will not amount to such fraud
    as will authorize a rescission of the contract, or a refusal to
    specifically enforce it.
3.  Same—Business Transactions—Freedom in  Trading—Gross
    Injustice—Relief Granted.—While the tendency of the court
    is to allow the utmost freedom in business and commercial
    transactions, and not to impose upon traders restrictions that
    would deny speculation, competition and profit, yet where
    gross injustice has been perpetrated and valuable property
    has been acquired at an inadequate price, the slightest evi·
    dence of fraud will be seized  upon to relieve the injured
    party.

Hays v. Meyers.

4. Sale of Remainder Interest—Illness of Life Tenant—Knowl edge of Purchaser—Ignorance of Remainderman—Inadequate Price—Fraud.—Where a party had knowledge that the owner of a life estate in a tract of land was dangerously ill and her death was expected in a day or two, went to the owner of the remainder interest, who lived twenty miles away, and had no knowledge of the dangerous illness of the life tenant, and purchased the land from him at one-half its value at the death of the life tenant, without disclosing the condition of the life tenant, such a purchase was a fraud on the vendor, and was properly set aside by the trial court.

DUFF & HUTCHERSON for appellant.

PORTER & SANDIGE and LEWIS McQUOWN for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The single question presented by this appeal is whether the concealment of the fatal illness and impending death of a life tenant from the owner of the remainder interest by a purchaser of the remainder is sufficient to authorize a rescission of the contract.

The appellee was the owner of an undivided interest in a tract of land in remainder, subject to the life estate of Mrs. Carnes. The remainderman had no knowledge or information that the life tenant who lived about twenty miles from him was dangerously ill, but the appellant W. S. Hays, who lived in the same neighborhood with the life tenant, knew of her dangerous sickness, and went to the home of appellee and purchased the remainder from him for six hundred dollars, which was the price fixed by the remainderman when he knew the life tenant was in good health. Hays spent the night preceding his purchase with appellee, but failed to inform him of the serious sickness of the life tenant, who died the day after the contract of sale and purchase was ex-

ecuted. The death of the life tenant converted the remainder into a fee worth twelve hundred dollars. No inquiry was made by appellee concerning the health or condition of Mrs. Carnes, nor did appellant Hays volunteer any information concerning it, or in any other manner mislead or deceive appellee in respect to her anticipated death, unless the following question and answer may be construed to be an inquiry and a deceptive answer. Appellant was asked by appellee "How Mr. and Mrs. Carnes were getting along," and he replied "He thought they were getting along a little smoother than they had been." That, after obtaining knowledge of the critical illness of the life tenant, and in anticipation of her speedy demise, appellant visited the home of appellee for the purpose of purchasing their interest in remainder, is conceded.

The question presented is a very narrow one. On behalf of appellant it is said that he was under no legal obligation to impart to appellee the information in his possession concerning the condition of the life tenant, but only to refrain from saying or doing anything that would affirmatively deceive or mislead them; and that his answer to the query 'how they were getting along," did not have this effect.

For appellee, it is insisted that they were ignorant of the material facts in the possession of appellant, and were induced by their ignorance to make the contract; that appellant with knowledge of their ignorance by his failure to speak, practiced a fraud upon them, or else by the evasive and deceptive answer to the question propounded, misled and deceived them.

A person may with perfect honesty and propriety use for his own advantage the superior knowledge

Hays v. Meyers.

of property he desires to purchase that has been acquired by skill, energy, vigilance and other legitimate means.   And in the ordinary business and commercial affairs of the world he is not under any legal obligation to disclose to the person he is trading with the reasons that influenced him to desire the property, or his views as to its value, or the sources of information at his disposal.  · Nor need he disclose the knowledge that he has concerning the circumstances or condition that may depreciate or enhance its value.   If any other rule were adopted, it would have a depressing tendency on trade and commerce by removing the incentive to speculation and profit that lies at the foundation of almost every business venture.   Every purchaser of land or other property of value buys it because he believes he can make a profit on the investment, or because he needs it in his business, or for some purpose of his own, and he is not required to explain the reasons that induce him to make the purchase, or give to the seller any information concerning the purpose to which he intends to put the property. .  ·

The following authorities illustrate the prevailing opinions upon this subject entertained by text-writers and courts of last resort:

In Cyc. vol. 20, page 65, it is said:

"Although a prospective purchaser has special knowledge of facts which enhance the value of the property, and the vendor is ignorant of these facts, the purchaser is ordinarily under no duty to disclose them to the vendor, and is not liable in an action of deceit for failure to do so.   But, if in such a case he volunteers to convey information which may influence the vendor's conduct in making the sale, he is bound to tell the whole truth; and a

fraudulent misrepresentation of a material fact will render him liable. * * * Where the parties deal on equal footing, and the facts in question are equally open to the knowledge of the vendor, the general principles requiring reasonable investigation or inquiry are applicable.''

In 14 Am. & Eng. Ency. of Law, 66, the editor states the rule as follows:

''It is a general rule that the mere failure of a party to a contract to disclose material facts—that is, mere silence without more—does not amount to fraud if no inquiry is made by the other party. Something must be said or done to conceal the truth, or there must be a partial or fragmentary statement or else the relation of the parties or the nature of the subject matter of the contract must be such as to impose a legal or equitable duty to disclose all material facts.''

In Taylor v. Bradshaw, 6 T. B. Mon., 145, we find this statement:

''Fraud may no doubt be, and frequently is, committed by the suppression of truth as well as by the suggestion of falsehood, and it is equally competent for the court to relieve against a fraud whether it be perpetrated in the one way or the other. By suppressing the truth, the deception may often be as base, and the injury to others as great as by the suggestion of falsehood. But the failure to disclose to others whatever is known to us, cannot with any propriety be at all times a suppression of the truth. From those who have reason to expect information from us, the truth should not be withheld; but such as look not to us for information, and expect no disclosure from us, have no cause to complain of our silence, and to reproach us for not speaking, with having suppressed the truth.''

In Williams v. Beazley, 3 J. J. Mar., 577, the court in approving the quotation from Taylor v. Bradshaw, further said:

"The Supreme Court of the United States has decided that the purchaser of property does not legally commit fraud by failing to communicate to the seller a knowledge of existing facts of which the seller is ignorant and the purchaser informed—although such facts if known would operate directly to enhance the value or price of the property. Whatever the moralists may think of these doctrines, the jurist is bound by them."

In Stewart v. Wyoming Cattle Range Co., 128 U. S., 383, the court said:

"In an action of deceit, it is true that silence as to a material fact is not necessarily as a matter of law equivalent to a false representation. But mere silence is quite different from concealment. A suppression of the truth may amount to a suggestion of falsehood; and if, with intent to deceive, either party to a contract of sale conceals or suppresses a material fact, which he is in good faith bound to disclose, this is evidence of and equivalent to a false representation, because the concealment or suppression is in effect a representation that what is disclosed is the whole truth. The gist of the action is fraudulently producing a false impression upon the mind of the other party; and if this result is accomplished, it is unimportant whether the means of accomplishing it are words or acts of the defendant, or his concealment or suppression of material facts not equally within the knowledge or reach of the plaintiff."

In Akers v. Martin, 110 Ky., 335, the court said: "If in addition to a party's silence, there is any

statement, word or act on his part which tends affirmatively to a suppression of the truth, or to cover up or disguising the truth, or to a withdrawal or distraction of a party's attention from the real facts, then the line is overstepped, and the concealment becomes a fraud. In other words, while a party may keep silence and violate no rule of law or equity, yet, if he volunteers to speak or convey information which may influence the conduct of the other party, he is bound to tell the whole truth; and a fraudulent or false misrepresentation of a material fact which would be important for the vendor to know affords ample ground for the interposition of a court of equity to relieve against the consequences of such a fraud."

In Mills v. Lee, 6 T. B. Mon., 91, Bowman v. Bates, 2 Bibb 47, Smith v. Fisher, 5 J. J. Mar., 188, other illustrations involving questions in some respects like the one before us, can be found.

From these authorities, the rule may be deduced that when the parties are dealing at arms length, and there is no relation of confidence or trust between them, and no representation or statement made that would have a tendency to deceive or mislead, and there are no special circumstances imposing a duty to speak, mere silence or the non-disclosure of facts in the possession of one of the parties will not amount to such fraud as would authorize a rescission of the contract, or justify a refusal to specifically enforce it. Although in every case the purchaser will not be permitted to rely on his silence as a defense, as there are times and occasions when it is the duty of a person to speak in order that the party he is dealing with may be placed on an equal footing with him as when the knowledge he possesses is not within the

fair and reasonable reach of the other—or of such
a character that by the exercise of diligence it could
be discovered, or it is not open alike to both parties;
and if any relation of trust or confidence exists be-
tween the parties, or any statement or representation
is made that does or might create a wrong impres-
sion, or there is a failure to impart information that
is asked for, and the knowledge of which would af-
fect the value of the property, or the acts or conduct
of one of the parties is reasonably calculated to
deceive or mislead the other, or the circumstances
surrounding the parties and the transaction are
such as to make it the duty to disclose information
not within the knowledge of the other—equity will
afford relief. In some jurisdictions, the courts have
gone so far as to hold that each party is bound in
every case to communicate to the other his knowledge
of material facts provided he knows the other to be
ignorant of them, and they be not open and naked or
equally within the reach of his observation. An ex-
amination of the various decisions will show that a
great many of them are on the narrow line, that
separates fair and legitimate contracts from those
that are tainted by fraud, and hence the courts have
virtually come to the point of adjudging each case
by the facts disclosed by the record. It will readily
be perceived that it is difficult to set down any fixed
rules that may be followed, especially in cases where
strangers are dealing with each other and no active
fraud is practiced or affirmative misrepresentation
indulged in, and where only a deceptive answer or
a studied silence may be seized hold of as evidence of
fraud. While the tendency of the courts is to allow
the utmost freedom in business and commercial
transactions, and not to impose upon traders restric-

tions that would deny speculation, competition and profit, at the same time, where gross injustice has been perpetrated, and valuable property has been acquired at an inadequate price, the slightest evidence of fraud will be seized upon to relieve the injured party, and it is a rare case when courts of equity cannot find some means of redress if the facts authorize it.

In the case before us, the appellees were in total ignorance of the fact that the life tenant was on her death bed. Appellant with actual knowledge of her impending death, visited appellees for the purpose of buying their interest at such a price as it would be worth with the life tenant in good health. If no inquiry had been made or question asked by appellees, concerning the life tenant, and appellant had refrained from any act or word that might have a tendency to mislead or deceive them concerning her health, it would present a question that is not before us in this record. But, when appellees inquired of appellant how the life tenant was "getting along," and he replied "he thought they were getting along a little smoother than they had been," his response was not only deceptive, but misleading. The inquiry was broad enough to embrace the condition of the life tenant's health, and ordinarily might fairly be said to include it. So that, when appellee without giving any intimation that the life tenant was dying or disclosing in any way his knowledge of her condition, replied he thought they were "getting along a little smoother than they had been," his purpose in making this character of reply was manifestly to avoid giving them the information that he must have understood their question called for. It is clear that his object was not only to withhold from them the

information in his possession, but to affirmatively deceive them by leaving the impression that there had been no immediate change in the life tenant's condition, or if there had been, that it was for the better.

Under the facts of this case, if appellant's contention was sustained, the courts would be used as an agency to enable him to perpetrate a wrong and to accomplish a fraud; when one of the ends of the law as correctly administered is to withhold relief from persons who seek its aid to practice fraud.

The judgment of the lower court must be affirmed.