## McClurkin v. De Gaigney.

(Decided June 1, 1923.)

### Appeal from Allen Circuit Court.

1. Mines and Minerals—Evidence Held to Show Purchaser of Oil Lease Did Not Rely on Representations as to Retail Sales.— Evidence that the purchaser of an oil and gas lease had had considerable previous experience in the operation of such leases and purchased with the intention of piping the gas to a nearby city, to sell for lighting and heating purposes, and possibly to extract gasoline therefrom, shows that he did not, in making the purchase, rely upon the vendor's representations as to retail sales of oil from the wells to neighboring farmers, so that the falsity of such representations would not defeat recovery of the purchase price.

2. Mines and Minerals—Caveat Emptor Applies to Sales of Gas Leases with Representations as to Quality.—Where the vendor and purchaser of a gas lease are dealing at arm's length, and no fiduciary relation exists between them, the maxim of "caveat

emptor" applies, and excludes reliance by the purchaser on fraudulent representations as to the quality of the gas produced, especially where the purchaser is shown to have had as great, or greater, knowledge of the subject involved as the vendor.

8. Mines and Minerals—Failure of Vendor of a Lease to Produce Test of Gas Held Not Fraud.—The failure of the vendor of an oil and gas lease to produce for inspection a copy of the test he had made of the gas produced by the property was not fraudulent concealment, defeating his right to recover the balance of the purchase price, where the evidence showed that he stated to the purchaser he had had such a test made, and the purchaser, who had had considerable experience in the business and might be classed as an expert in some branches of it, chose to rely on his own experience, and did not ask to see a copy of the test.

HARPER & DENTON for appellant.

F. R. GOAD for appellee.

Opinion of the Court by Turner, Commissioner—Affirming.

On and prior to the 7th of September, 1920, appellee was the owner of an oil and gas lease on the Price Turner farm of about one hundred and ninety acres near Scottsville in Allen county. On that date by his deed of assignment he sold, transferred and assigned the same to appellant John H. McClurkin in consideration of one thousand dollars in cash and McClurkin's note for seventy-seven hundred dollars, payable in sixty days, and a lien was retained to secure its payment.

There was no warranty or guaranty of any kind or nature embraced in the deed of assignment, either as to the quality or quantity of the oil or gas production, or even as to the title of the property.

Shortly after the note became due, the same being unpaid, appellee instituted this action wherein he sought judgment on the note, and an enforcement of his lien.

In his answer and counterclaim defendant alleges that in purchasing the property and entering into the contract he relied upon certain representations and warranties made to him by the plaintiff; that the property is near Scottsville, Kentucky, and at the time was producing quite a lot of gas and defendant agreed to purchase the same for the purpose of piping the gas to Scottsville and putting the same on the market, and possibly manufacturing some gasoline therefrom, and also to operate some small oil wells on the lease. He avers

that the plaintiff understood his said plans and knew what his purpose was in making the purchase, and that plaintiff represented to him that he had caused the gas to be examined and tested, and same was found to be a highly commercial gas and rich in gasoline, and plaintiff further represented to defendant that he had built up a trade for the oil produced on the lease and had an income therefrom of twelve dollars per day, and further that there was only one dry hole on the lease and defendant says he believed and relied upon such statements and representations and was thereby induced to purchase the property; but he says that said representations were untrue and fraudulent and made by the plaintiff with the fraudulent intent to induce the defendant to purchase the property. He then avers that the gas has no commercial value whatever, and contains such a great percentage of sulphur that it cannot be used and is absolutely worthless and without commercial value; that it has less than one per cent. of gasoline in it, which makes it of no value for gasoline purposes, and he says that the plaintiff had no regular trade established which gives him twelve dollars a day, or anything near that amount, from the sale of the oil, and that the wells did not at that time produce sufficient oil to bring an income of twelve dollars per day if there had been such market as represented by the plaintiff.

He then tendered back to the plaintiff the reassignment of the lease and asked for a rescission of the contract, and a judgment for the one thousand dollars and interest paid thereon.

In the first paragraph of the reply the material averments in the counterclaim are put in issue, and in the second paragraph the plaintiff affirmatively pleads that defendant is an experienced oil man and purchased the leasehold estate in question in reliance upon his own judgment and after a personal inspection of the same and after personally viewing the leasehold, and that defendant claims to be a geologist, and in this capacity inspected the same before the trade was consummated. It is further alleged that at the time of the inspection and the deal, defendant knew there was no pipe line extending to the leasehold, and plaintiff told defendant that all the oil he had sold from the lease he had sold to farmers and merchants for farm use and otherwise, and that the oil so sold was hauled from the lease in wagons and conveyances, and plaintiff did not at any time represent or

warrant that any certain sum could be realized out of the oil, and defendant was at the time of the sale fully aware of all these facts.

The chancellor dismissed the defendant's counterclaim, gave the plaintiff a judgment for the amount of his note and directed the enforcement of the lien, and the defendant has appealed.

The evidence shows that defendant has had large and extensive experience as an oil man; that he is a highly intelligent man and familiar, not only with the practical side of the oil business, acquired by him in different oil fields, but is to a great extent an expert in many of the technical and scientific aspects of it.   It is shown that he expressed high approval of the geological formation of the lease in question, and not only professed to have, but in fact seems to have had, technical knowledge of such things.   The defendant had himself had some experience in the gas business in eastern Kentucky, but in the consummation of this deal he not only had the benefit of his own experience in the oil and gas business, but he had the counsel and advice of another expert oil and gas man who was associated with him in the operation and management of a large oil company in the Allen county field.

It is fairly apparent from the evidence that appellee did exaggerate the amount of his income from the oil produced on the property, but it is equally apparent that appellant knew there was no pipe line connected with the wells on the property and understood fully that appellee's dealings in the oil had been in retailing to individaul customers scattered over the country, and that what trade he had was obtained through advertisement in trade journals.   It is clear that this feature of the matter carried no great weight with appellant and that he placed no reliance upon it in making his purchase.   He was in the habit of making large deals, and did not engage in the retailing of oil by the barrel to individuals.   He may have had in mind that he would further develop the property for oil producing purposes at a future time when a pipe line might be accessible, but that appellee's profit made in the retailing of oil was any incentive for him to enter into this purchase we cannot and do not believe.

On the contrary the record is convincing that the real purpose defendant had in the acquisition of the property was to pipe the gas produced to Scottsville, and there sell it for lighting and heating purposes to the citizens.

He and his witness, Donaldson, each testify that defendant told this to plaintiff prior to and at the time of the purchase, and they each testify that plaintiff told them that he had had the gas from this lease tested and the same was rich in gasoline and good for commercial purposes.

There appears to be no complaint of the quantity of gas produced on the property or any misrepresentation made by plaintiff as to such quantity, but the claim is urgently made that he falsely and fraudulently represented the gas produced thereon was rich in gasoline and good commercial gas, when in truth and fact the evidence tends to show that the gasoline content was so small as to make it unprofitable to make gasoline therefrom, and that there was so much sulphur in the gas as to make it unfit for commercial use. On these questions, however, plaintiff emphatically denied that he made any such representation. He does say that he told appellant he had the gas tested, but that neither appellee nor his friend, Donaldson, asked to see or examine the report so received by him, and in this latter statement they all three agree.

The result of this test so previously had by plaintiff, is filed with his deposition in this case and shows that the gasoline production thereon per one thousand cubic feet was estimated at approximately one gallon, but the plaintiff testifies he did not at the time know whether that would or not make it profitable in the manufacture of gasoline.

Nor is there anything in this test or analysis whatever showing what the percentage of sulphur was in the gas taken from this well, and there is nothing in the record to show that plaintiff knew there was any unusual content of sulphur in the gas produced thereon. It is true he does state in his evidence in speaking of that report that it showed the gas was saturated with sulphur, but in this he was evidently mistaken, for the report itself fails to show anything whatever about the sulphur content.

From a survey of the whole evidence we cannot believe appellant or his friend and adviser, with the practical as well as the technical and scientific knowledge their experience had given them, put any great reliance upon the statements of a more or less inexperienced person as to the quality of the gas produced on this lease. They had each had long and varied experience, and ac-

cording to appellant's own evidence he was a reader of scientific books on oil and gas, and expressed great satisfaction with the geological structure on the lease in question. The admission by appellant and Donaldson that appellee stated to them he had this gas tested, and that neither of them asked to see the result of that test is most convincing that they were relying alone on their own practical and scientific knowledge and placed no reliance whatever upon any statements the plaintiff made.

It is admitted the alleged representations as to the quality of the gas were all made by appellee before the deed of assignment was written; the deed of assignment was wholly prepared by appellant himself, and it seems fair to assume if he had placed any reliance whatsoever upon appellee's alleged representation of quality, he would have placed in that instrument some guaranty or warranty on that subject.

In such circumstances where a false and fraudulent representation as to quality is relied upon, the doctrine of *caveat emptor* applies, and especially where the purchaser is shown to have had as great or greater knowledge of the subject involved than the vendor.

It is said in Black on Rescission and Cancellation, volume 1, section 61:

"The maxim *'caveat emptor'* ('let the buyer beware') expresses a rule of the common law applicable to sales of property which implies that the buyer must not trust blindly that he will get value for his money, but must take care to examine and ascertain the kind and quality of the article he is purchasing, or, if he is unable to examine it fully or intelligently, or lacks the knowledge to judge accurately of its quality or value, to protect himself against possible loss by requiring an express warranty from the seller."

The parties in this case were dealing at arm's length; they occupied toward each other no fiducial or confidential relation; they were each in the oil and gas producing business; the purchaser at least had some expert and scientific knowledge, not only of geological structures from which oil and gas are produced, but he had a practical knowledge of the production of oil and gas from such structures, how to market the same, and how the values were to be extracted from them. The only concealment of a material fact appearing in this record

by appellee is that he failed to state to appellant that his test of the gas had shown it would produce a gallon of gasoline to the one thousand cubic feet of gas; but even that concealment does not appear to have been fraudulent, for the parties all agree that during the negotiations appellee stated he had had the gas tested, and appellant took so little interest in that test he made no request to see it or ascertain what its result was. As said by this court in the case of Hays v. Meyers, 139 Ky. 446:

"From these authorities the rule may be deduced that when the parties are dealing at arm's length, and there is no relation of confidence or trust between them, and no representation or statement made that would have a tendency to deceive or mislead, and there are no special circumstances imposing a duty to speak, mere silence or the non-disclosure of facts in the possession of one of the parties will not amount to such fraud as would authorize a rescission of the contract, or justify a refusal to specifically enforce it."

The same general doctrine is stated in Pomeroy, section 904, as follows:

"In ordinary contracts of sale, where no previous fiduciary relation exists, and where no confidence, expressed or implied, growing out of or connected with the very transaction itself, is reposed on the vendor, and the parties are dealing with each other at arm's length, and the purchaser is presumed to have as many reasonable opportunities for ascertaining all the facts as any other person in his place would have had, then the general doctrine already stated applies; no duty to disclose material facts known to himself rests upon the vendor; his failure to disclose is not a fraudulent concealment."

We are convinced from the whole record the purchase was a speculative venture, and that appellant in making it relied wholly upon his own superior practical and scientific knowledge, and not upon any alleged misrepresentations as to the quality of the gas.

Judgment affirmed.