## Shilling v. McCraw.

Dec. 8, 1944.

784

A. W. Mann for appellant.

L. C. Fielder and Davis M. Howerton for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On July 9, 1934, the appellant, and defendant below, Pearl Shilling, was president of the Ashland Drug Company in Ashland, Kentucky, the stock in which was owned by him and members of his family. The corporation was, at least nominally, engaged in the drug business, but the chief article of trade in which it dealt was the selling of liquor. At the same time the appellee, and plaintiff below, J. E. McCraw, was engaged in selling automobiles and trucks, under the trade-name of McCraw Motor Company, located in the same city.

On the day indicated appellant purchased a motor truck from appellee at the agreed price of $723.67, $123.67 being then and there paid by appellant, and the remaining $600 was paid by appellant delivering to appellee two unmounted stones which he represented to be genuine diamonds, and, according to the petition, he expressly warranted that they were such. Two years thereafter and in 1936, the appellee borrowed $400 from the Third National Bank of Ashland for which he executed his note and pledged as collateral security therefor the two stones he obtained from appellant. He later paid that note to the bank, following which he obtained a loan from Ralph Warren, who was connected with a

bank in Huntington, W. Va., and to secure that loan he pledged the same stones to Warren.

Appellee had a brother, Carl C. McCraw, residing in Charlotte, North Carolina, and who was an officer in a bank in that city. Appellee was informed by his North Carolina brother that he was of the opinion that he could sell the stones, if they were genuine diamonds, for the sum of $700. Appellee so informed Warren, who had them in his possession and deposited in the vault of the bank of which he was an officer. Plaintiff obtained the permission of Warren to send the stones to his brother in Charlotte, N. C., for the purpose of testing and selling them at the price indicated. The proof clearly shows that Warren, in sending the stones to appellee's brother, carefully enclosed and sealed them in a sealed package and sent them by registered mail. The proof also shows that when appellee's brother received the package there were no indications of its being tampered with. The same care and the same method of transportation was adopted when the brother returned the diamonds to Warren at Huntington, W. Va. In the meantime the North Carolina brother and the prospective purchaser had the stones tested by an experienced jeweler of long standing and whose qualifications to make such a test are not questioned. He found the stones to be white sapphires made from brilliant glass and having no market value exceeding $6. That test was made in August, 1937, and when appellee received notice thereof he reported the result to appellant, who still insisted that the stones he sold or traded to appellee were genuine, and repeated practically what he told appellee at the time the stones were first delivered to him.

Various discussions were had between the parties following the report of appellee's brother concerning the genuineness of the unmounted stones, in which defendant continued to insist that they were genuine although there is evidence in the case that he had been otherwise informed by a competent jeweler. But, be that as it may, appellee filed this action in the Boyd Circuit Court on October 27, 1941, to recover the $600 the valuation placed upon the stones, with interest, alleging in his petition the deceit practiced on him by appellant, and also the warranty he made to appellee at the time the stones were delivered to him.

Appellant's defense was a denial of the material averments of the petition as amended, and in other paragraphs he pleaded laches, and the statute of limitations. Previously filed demurrers by defendant to plaintiff's petition were overruled, and the reply denied the material averments of defendant's answer. The case was tried by a jury, to which both parties consented, and it returned a verdict for appellee in the sum of $594, being the amount of $600 that appellee paid for the stones in trade less their actual value of $6. Appellant's motion for a new trial was overruled and from that order, and the judgment rendered thereon, he prosecutes this appeal.

In his motion for a new trial appellant complains of: (1) Error of the court in the admission of evidence on behalf of plaintiff; (2) rejection of evidence offered by him; (3) that the verdict is flagrantly against the evidence; (4) that the verdict is excessive, and (5) that instructions Nos. I and II, given to the jury, were erroneous. We have carefully considered each of them in the light of the record and find them all without merit. One defense, not heretofore mentioned, was that at the time of the involved transaction appellant was acting not for himself but for his corporation, the Ashland Drug Company. But the record contains abundant evidence to establish the fact that appellant was not then acting for his corporation, but that the sale of the truck and all negotiations prior to its purchase were made with him by appellee individually and not for and on behalf of his corporation, although the bill of sale, made after the contract was completed, was issued to the corporation and which was done because appellant specifically requested it. However, if appellant did purchase the truck from appellee for and on behalf of his corporation for which he was acting as agent, he would not then become exonerated from personal liability to appellee for his practiced deceit and warranty complained of in the petition if he concealed his agency from appellee at the time, and intentionally or fraudulently misrepresented the quality of the stones, which the evidence clearly shows that he did. See Trimble v. Ward, 97 Ky. 748, 31 S. W. 864, and following cases listed in Sheppard's Notes.

Although appellant's motion for a new trial relies on five alleged errors of the court, his counsel in brief

filed in this court argues but four of them, (a) insufficient evidence to support the verdict, (b) that appellant at the time of the purchase of the truck was acting solely for his corporation and not individually, (c) that the rule of caveat emptor applies to this case, and (d) the right of action was barred by the statute of limitations.

Argument (a) is based entirely upon the fact that somewhere and at some time before appellee discovered that the stones were counterfeit and not what they were represented to be by appellant, some thief may have substituted the counterfeit stones for the genuine ones traded to appellee; but which contention is founded on no proof whatever, but only upon counsel's surmised possibility. On the contrary, everyone who handled the stones testified without contradiction that when they were in their respective possession they were kept under lock and key and the only opportunity for any substitution by some supposed thief was at the two times of their transfer through the mail to appelleee's brother in Charlotte, N. C., and the return of them to Warren with whom they were then deposited as collateral security. However, as we have pointed out, even counsel's surmise is not sustained, since the highest degree of care was exercised in transporting the stones to the North Carolina brother and his return of them to Warren, the rightful custodian. We have above pointed out how such transfers were made and the facts at the time the stones were both forwarded and received on each occasion, and which is the best evidence that could be obtained to prove that the package so transferred had not been tampered with in any manner whatever. Therefore, argument (a), as we have said, is without foundation.

We have already discussed and disposed of argument (b). Argument (c), to the effect that caveat emptor applies to the facts of this case, is even less meritorious than argument (d). The contention under argument (c) is attempted to be supported by the case of Marshall v. Peck, 31 Ky. 609, 1 Dana 609; Hays v. Meyers, 139 Ky. 440, 446, 107 S. W. 287, 289, 17 L. R. A., N. S., 284, 139 Am. St. Rep. 493, and McClurkin v. De-Gaigney, 199 Ky. 458, 251 S. W. 617. But a reading of those opinions not only fails to support counsel's contention as so urged by him, but on the contrary our opinions in each of those cases expressly held that the

doctrine of caveat emptor had no application whatever to a state of fact as disclosed by this record. On the contrary, in each of them there was no proven warranty, express or implied, as the basis of plaintiff's right of action; nor was there any deceit or fraud practiced by the seller on the buyer. But in this case, as we have seen, there is both an express and implied warranty, and also misrepresentations as to the character of article purchased, and which was unknown to plaintiff, who possessed no expert knowledge relating to diamonds, the genuineness of which is obscured.

The defense of limitations urged in argument (d) is equally unmeritorious. Under the provisions of section 413.120 KRS, subsection (1), "an action upon a contract not in writing, express or implied" must be commenced within five years after the cause of action accrued, and in subsection (12) of the same section it is prescribed that "an action for relief or damages on the ground of fraud or mistake" must be brought within the same limiting period. But in subsection (3) of section 413.130 of the same statutes the cause of action for fraud or mistake as contained in subsection (12) of section 413.120 does not accrue "until the discovery of the fraud or mistake," but in any event "the action shall be commenced within ten years after the time of making the contract or the perpetration of the fraud."

In the very recent case of Dycus v. Dycus, 295 Ky. 847, 175 S. W. 2d 997, 998, we had occasion to construe the two statutory provisions relating to limitation of actions based upon fraud or mistake, and in our opinion we said:

"The rule is that, if one who is injured by fraud or mistake is apprised of that fact at the time it is perpetrated, he must bring his action within five years thereafter, but if he is not so apprised he must bring his action within five years after the discovery, but in no event shall the action be brought after the lapse of ten years from the making of the contract or the perpetration of the fraud. Reid v. Singer Mfg. Co., 128 Ky. 50, 107 S. W. 310."

However, it was not shown in that case whether the fraud committed on the plaintiff therein was discovered before the expiration of the primary limitation of five years, or thereafter. In 295 Ky. at page 403, 174 S. W.

2d 726, is reported the case of McCoy v. Arena. We held in that case that if the discovery of the fraud or mistake was made after the expiration of five years before the commencement of the action, it became necessary for plaintiff to both allege and prove the exercise of diligence to discover the fraud within the five years immediately following the transaction involving fraud or mistake. However, both opinions held that if the fraud was discovered within the five-year period, then plaintiff had five additional years within which to commence his action for relief, provided he commenced it within ten years from the time the fraud was perpetrated or the mistake made.

In this case plaintiff discovered the fraud some three years after he purchased the stones from defendant, which was in 1937. The discovery was made within the five-year period of limitations and, under the statutes and opinions supra construing them, he had five years thereafter within which to bring his action, which he did within that time and less than eight years from the time the fraud was perpetrated on him. It is therefore clear that the defense of limitations cannot be sustained.

No complaint is made in brief of counsel for appellant of the instructions given, and we have discovered, after carefully reading them, no prejudicial error therein. In not discussing that alleged error counsel abandoned it, and which we have so held, without exception, in numerous cases brought here on appeal.

In concluding this opinion we think it not amiss to say that during the writer's long experience as a member of this court he has not met with a more glaring instance of fraud and deceit than is contained in this record. Defendant was made aware of the character of stones he traded to plaintiff before the latter's purchase of them. He states that he does not know the name of the person from whom he obtained them nor where such person resided, nor the price that he paid, nor whether he exchanged whiskey or other property or paid cash therefor. He testified that he had experts to examine the stones before he traded them to plaintiff, one of whom was a jeweler in Ironton, Ohio, and another one was a Miss Mada Winters, who found the alleged diamonds to be spurious and counterfeit. He seeks to overcome that knowledge by claiming that plaintiff had an oppor-

tunity to examine and to discover for himself whether the stones were pure or counterfeit. But plaintiff denies having any such opportunity and that he continued to rely upon the positive express representations made to him thereafter by defendant—who was a trader and speculator in diamonds—as to the purity of the stones delivered to him and that he (plaintiff) was entirely ignorant of such matters. In the circumstances we think he had a right to so confide in defendant's representations. Neither do we find any ground supporting the defense of laches or estoppel as contained in defendant's answer as amended.

It therefore follows that the court did not err in overruling defendant's motion for a new trial, and the judgment is affirmed.