## CURTIS v. DRYBROUGH.

### No. 1224.

District Court, W. D. Kentucky, at Louisville.

Feb. 24, 1947.

152

Joseph R. Rubin and Skaggs, Hays & Fahey, all of Louisville, Ky., and Howard R. Hirsch, of Cleveland, Ohio, for plaintiff.

D. A. Sachs, Jr., of Louisville, Ky., for defendant.

SHELBOURNE, District Judge.

Jerome A. Curtis, as successor trustee for the bankrupt estate Forest City Brewery, Cleveland, Ohio, filed this action against F. W. or Fritz Drybrough, in which plaintiff for the bankrupt estate seeks to recover a money judgment in the sum of $297,000, the amount of profit alleged to have been realized by the defendant and Joseph G. Ehrlich out of the purchase and subsequent sale by Ehrlich June 19, 1940, when Ehrlich was the duly qualified and acting Trustee in Bankruptcy, of Forest City Brewery, an Ohio Corporation, which had been adjudged bankrupt May 10, 1940 in the District Court for the Northern District of Ohio, Eastern Division.

The defendant filed a motion to dismiss on four separate grounds—

1. That the complaint fails to state a claim upon which relief can be granted.

2. Lack of jurisdiction over the subject matter.

3. That the claim is barred by the two-year Statute of Limitations embodied in Title 11, U.S.C.A. § 29, subs. d, e.

4. That the claim is barred by the five-year Statute of Limitations embodied in Section 413.120, Kentucky Revised Statutes.

For the purpose of considering the motion to dismiss, the allegations of the complaint should be taken as true.

It is alleged that Joseph G. Ehrlich was elected Operating Trustee of the bankrupt's property, having been prior to his election as Operating Trustee, the Operating Receiver for the company's property, business and affairs. That at the time he offered the property for sale Ehrlich and defendant Drybrough participated in purchasing the property and that they organized a new corporation identical in name with that of the bankrupt and without disclosing to the Court the fact that Ehrlich was a substantial stockholder, director and officer in the newly formed corporation, the sale was consumated, and that as a direct result of the participation and collaboration of Ehrlich and the defendant, profits and gains in the aggregate sum of $297,000 were realized.

Counsel for defendant, in support of his contention that the complaint does not state a claim upon which relief can be granted, says:

"We do not understand that persons interested in organizing a corporation and in subscribing and paying for stock in the same * * * are precluded from inviting the expert selected by the Court to operate the business, to become a stockholder in said corporation, and in fact to be an executive officer and operate the new business. It may well be argued that neither this defendant, nor the other parties mentioned in the complaint, would be willing to make investments of the magnitude disclosed in the complaint unless the individual, Ehrlich, would have consented to become interested in and take over the management of the new corporation."

Defendant's Counsel has fairly summarized the statements of the complaint. It charges that the Trustee in Bankruptcy and defendant, together with certain other persons "collaborated" to organize a corporation, in which each of the parties would take stock, and the corporation would, under the plan, acquire assets of the bankrupt estate. It further charges that the plan was consumated and after the corporation had acquired the assets,.

the Trustee acquired all the stock in the newly formed corporation, then sold the assets and dissolved the corporation.

Counsel says he does not understand that persons interested in organizing a corporation are precluded from inviting the expert selected by the Court to operate a bankrupt business from becoming a stockholder or executive officer in the new business. He insists that defendant and those organizing the new corporation would not have been willing to go into the venture had the Trustee, Erhlich, not agreed to become interested and take over the management of the new business.

In re Wesley Corporation, D.C., 18 F.Supp. 347, Judge Ford considered the rule involved and said:

"By long-established principles of equity jurisprudence, nothing is more clearly established than that a trustee may not become the purchaser of the trust estate either directly or through agents or other persons acting in his behalf. Both creditors and bankrupt alike have the right to expect that the trustee will not use his official position to speculate for his personal profit in the property entrusted to his care. The duty to enforce these principles rests no greater upon any courts than upon the federal courts of bankruptcy. The prime object of Congress in enacting the bankruptcy laws was to secure for creditors as well as bankrupts the efficient and fair administration of estates. In re Frazin & Oppenheim, 2 Cir., 181 F. 307; In re Allen B. Wrisley Company, 7 Cir., 133 F. 388; In re Hawley, D.C., 117 F. 364; Remington on Bankruptcy, § 3560. It is not important whether the price paid at sale was adequate in a particular instance. The rule rests upon vital considerations of public policy and is applicable in every case. If the facts alleged in this amendment be true, the duty of the court to require the trustee to account for all proceeds derived from the property, including any profits from its resale, is clear and imperative." 18 F.Supp. at page 355.

In Re Van Sweringen Company et al., 6 Cir., 119 F.2d 231, the rule is thus stated:

"It seems soundly settled that one who knowingly joins a fiduciary in purchasing for profit the property of the trust estate in unlawful circumstances becomes jointly and severally liable with him for resultant profits." 119 F.2d at page 234.

The above opinion quotes with approval an excerpt from Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545; 62 A.L.R. 1 (opinion of Chief Justice Cardoza)—

"Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. * * * Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court."

The unbending tradition as to conduct required by fiduciaries is reflected by many decisions of the Supreme Court. See Crites, Inc. v. Prudential Ins. Co., 322 U.S. 408, 64 S.Ct. 1075, 88 L.Ed. 1356; Woods Trustee, v. City National Bank & Trust Company et al., 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820; Weil v. Neary, 278 U.S. 160, 49 S.Ct. 144, 73 L.Ed. 243; Jackson v. Smith, 254 U.S. 586, 41 S.Ct. 200, 201, 65 L.Ed. 418.

In the case last cited, Ambrose, a receiver, and Smith, his attorney, agreed with Wilson, who had no connection with the trust, that Wilson would purchase the property at a sale by the trustee under a deed of trust. The three persons (Wilson, Smith and Ambrose) agreed to share equally all cost of the property and expenses of their purchase and would equally own the property. Wilson did purchase the property. It was thereafter sold for a substantial profit and the profit divided in accordance with the agreement. When their conduct became known, Ambrose was re-

moved as receiver, a successor receiver appointed and the latter sued Wilson and Smith to recover the profits which they and Ambrose had made. The Court said:

"Since he '(Ambrose)' did pursue it, (make the agreement with Smith and Wilson to purchase property of estate of which he was Receiver) and profits resulted, the law made him accountable to the trust estate for all the profits obtained by him and those who were associated with him in the matter, although the estate may not have been injured thereby. Magruder v. Drury, 235 U.S. 106, 35 S.Ct. 77, 59 L.Ed. 151. And others who knowingly join a fiduciary in such an enterprise likewise become jointly and severally liable with him for such profits. (Citing cases) Wilson and Smith are therefore jointly and severally liable for all profits resulting from the purchase; the former although he had no other relation to the estate; the latter, without regard to the fact that he was also counsel for the receiver. * * * Smith and Wilson are held liable for knowingly confederating with one who, as receiver of the estate of the note holder, owed a duty to it, and who put himself in a position where his personal interest conflicted with his duty."

■ I therefore conclude that the complaint does state a claim upon which relief could be granted.

■ The second reason urged by defendant for dismissal is that this Court has no jurisdiction over the subject matter, "to-wit the administration, sale and confirmation thereof of assets by a bankruptcy court of competent foreign jurisdiction."

Counsel makes the additional averment: "Nor can the sale by the bankruptcy court in Ohio be collaterally attacked in this action."

I do not conclude from the reading of the complaint that plaintiff is here attacking the sale by the bankruptcy court or seeking to set it aside. Plaintiff's claim rests upon the theory that the sale stands but that the law requires the receiver and those who acted with him to account for all profits realized from the final disposition of the property by them. If a loss had occurred by their venture, no cause of action would have arisen.

■ Defendant relies upon the Statutes of Limitations in Title 11 U.S.C.A. § 29, sub-sections d and e, and upon Section 413.120(12) Kentucky Revised Statutes. He cites the cases of Reeves Steel Const. Co. v. Weiss, 6 Cir., 119 F.2d 472 and Shilling v. McCraw, 298 Ky. 783, 184 S.W. 2d 97 as controlling of his right to include a plea of limitation in a motion to strike.

Plaintiff insists that the question of limitations is properly raised on motion to dismiss only in actions in which the statutory remedy is granted upon condition that an action be instituted within a prescribed period of time. In that class of cases the institution of the action within the prescribed time limit is jurisdictional because the effect of such statutes is to destroy the cause of action after the lapse of the statutory period.

Plaintiff also insists that Rule 12(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, enumerates the defenses which may be raised by motion to dismiss and that, since the rule does not embrace the defense that the cause of action is barred by limitation, such defense comes within the meaning of the language of the rule "Every defense, in law or fact * * * shall be asserted in the responsive pleading."

The period of limitation does not begin to run against the causes of action referred to in subsection d, of § 29, Title 11 U.S.C.A. until the closing of the estate. Sub-section e of that section would apply only in event facts showing its applicability to the particular situation were stated. Herget, Trustee v. Central National Bank & Trust Company 324 U.S. 4, 65 S.Ct. 505, 89 L.Ed. 656.

The date of adjudication would not start the period of limitation provided by Section 413.120 (12) Kentucky Revised Statutes, because it might be entirely possible for the conduct on the part of the trustee or receiver and his associates to occur after the lapse of this period.

The question of limitation can better be considered when concisely plead by a responsive pleading and for that reason that

question is reserved by the Court at this time.

The motion to dismiss is overruled and an appropriate order will this day be entered.