## Russell et al. v. Fiscal Court of Boyd County.

(Decided June 24, 1938.)

W. H. DYSARD for appellants.

CLAYTON SMOOT for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

At the beginning of the calendar year Boyd County found itself financially embarrassed with a large outstanding debt and insufficient funds and revenue with which to meet same. The county commissioners proceeded to set the house in order by securing the advice of the presidents of the three banks in the county as a finance committee. In addition to refunding matured and maturing bonds amounting to $113,000, it has made plans to liquidate and fund its floating debt of $240,365.92. The refunding of the road and bridge bonds is considered in a separate opinion. We deal with the proposal to issue bonds for $200,000 to cover that amount of warrants, the balance being paid out of current revenue. To establish the validity of the bonds, the Fiscal Court instituted this suit against two representative taxpayers. Issues were raised and evidence taken to prove the validity of the proposal. The

judgment sustaining the contracts and bond issue is before us for review.

A complete audit of the financial accounts of the county as far back as 1914 has been introduced in evidence. By it and the testimony it is made to appear that the first deficit in the revenue occurred in 1914. It was for $4,668.55. The debt fluctuated after that year. During all this period the tax levy for general purposes has been 50 cents on real estate, tangible personal property and corporation franchises, and 20 cents on bank stock. There was no poll tax ever levied. Because of the decrease in the assessed valuation of property for taxation and large delinquencies in payment, it became necessary in 1937 to transfer $16,625.28 from the general fund to the sinking fund. These delinquencies, particularly since 1929, have been considerable. The total loss on account of the failure of collections during the period is $163,600.30. In addition, from 1914 to 1922, inclusive, the county had anticipated aid from the state in constructing highways under the provisions of Chapter 87 of the Acts of 1914, known as the State Aid Road Building Law, in the aggregate of $238,210.82. But it actually received on this account only $97,476.40, thereby creating a deficit on this account of $140,734.42. There are between twenty-two and twenty-three thousand registered voters in the county. Estimating that there would have been not less than 8,000 polls collected had the county levied a $1 poll tax, as it was authorized to do during this period of 23 years from 1914 to 1937, the sum realized would have been $184,000. Thus it is shown that if these three items of reasonably and lawfully anticipated revenue or income amounting to $488,-334.43 had been collected, there would be a favorable balance of $248,000. Eliminating the anticipated state aid for the roads, there still would have been a surplus of more than $100,000.

On the question as to the validity of the debt it is proved that the assessed valuation of property for tax assessment for 1937-1938 is $27,431,072, so that the funding of $200,000 outstanding warrants is less than one per cent of the assessed valuation. It is proved that at no time has the debt exceeded two per cent as is permitted by Section 158 of the Constitution.

There is submitted a detailed statement of the amounts and owners of every warrant going to make up

the $240,365.92 outstanding. The accountants tracing these warrants to the original purposes for which issued show that every one of them was for governmental or other necessary and legal expenses.

It, therefore, appears that under the authority of the statute and many similar cases, the issuance of the bonds is valid and legal.

Wherefore, the judgment is affirmed.