# Hale v. Fiscal Court of Fulton County et al.

March 22, 1940.

L. L. Hindman, Judge.

W. B. Amberg for appellant.

H. H. Lovett and Wood Tipton for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Reversing.

This is an appeal from a judgment holding valid a proposed so-called refunding bond issue to the amount of $280,000. The fiscal court, appellee, was plaintiff below, and the action apparently friendly, undertook to seek a declaration of rights.

In the early part of 1924 an election was held on the question as to whether or not there should be issued road and bridge bonds to the amount of $450,000. The proposal carried by a vote of more than 4 to 1. Thereafter, at various dates, $300,000 of bonds, bearing 5 per cent interest, were issued.

It is plead and proven that the assessable value of taxable property in the county for each of the years previous to the year in which the bonds were issued, and the aggregate total, were within an amount which would not exceed, with all other existing debts, limitation of indebtedness as provided by Section 157 of the Constitution, or any other constitutional or statutory law.

Of the first issue (1924) there are now unpaid and outstanding $68,0u0 of the principal amount; of the second issue (1925) $95,000, and of the third issue a like amount. Each issue was for $100,000 of bonds. In addition to the principal sums named, the interest from July 1, 1938, remained unpaid at the time of the suit. We come now to the proposed issue of $280,000 of refunding bonds; the sum being the total of outstanding bonds mentioned above.

In 1937, the year prior to the year in which the proposal to issue is made, the assessed valuation of property in Fulton County was $8,769,486, a falling off of former valuations of the same property, due, as is said, to a lowering of values of taxable properties, and due thereto, and delinquencies in tax collections, the 20c tax levied for retiring the bonds and meeting interest, is insufficient to create a fund to redeem "the presently outstanding bonds or interest coupons."

It is asserted that "arrangements have been made with a large portion of holders of outstanding bonds and coupons, whereby the same may be refunded into bonds of the same principal amount bearing interest at the rate of 4%, which arrangement will result in a large saving in interest and enable the county to meet the interest on such bonds as same mature and create a sinking fund for the retirement of the principal at maturity."

It is said in petition that when the new bonds are issued in accordance with a resolution later referred to, and exchanged in accordance therewith, the new bonds will constitute a valid and binding obligation on the County. However, says the pleader, the defendant is denying the right of the plaintiff to issue the bonds for the purpose mentioned, and denying the validity of the resolution directing their issuance.

In a petition reciting the facts as we have detailed, the lower court was called upon to declare whether the officials had the right and authority to issue the proposed 4 per cent bonds "for the purpose of retiring a like principal amount of outstanding 5 per cent bonds," and if issued in accordance with the resolution whether the same would constitute a binding obligation on the county.

Hale, made a party only in the caption of the petition, was summoned and answered. That the suit is a friendly one may be gathered from the tenor of his responsive plea. He, alleging lack of sufficient knowledge to form a belief, denies the allegations of the petition as to the alleged valuation of assessable property in Fulton County for the involved years, and concludes that the original bonds were invalid and denied the right of the county to issue any refunding bonds.

The resolution under which the reissue is proposed recites the facts as alleged in the petition. It is, perhaps, more complete and comprehensive in part. It is shown that of the issue in 1924, bonds Nos. 1 to 32, inclusive, have been paid, leaving the balance, as above stated, unpaid as to interest and principal, as of July 1, 1938. Of this number, three bonds to the amount of $12,000 were due on July 1, 1937, 38 and 39. As to the next issue of 105 bonds (March 1, 1935), one $5,000 bond was due and unpaid March 1, 1938, and another March 1, 1940. Of the third issue (1926) three were matured and unpaid on March 1, 1938, 39 and 40, respectively, each for $5,000. So, all told at this time there are unpaid as to principal and interest, bonds to the amount of $37,000, if we are correct in concluding that those due in 1940 remain unpaid.

The resolution authorizes the issuance of $258,000 in 4 per cent bonds, "for the purpose of refunding a like principal amount of the presently outstanding bonded indebtedness," represented by the first, second and third issue of bonds, to the extent of $300,000, to be dated as of July 1, 1938, the last due and payable on July 1, 1958. The resolution carries the same provision as stated in petition, and further provides:

"(7) Simultaneously with the execution and delivery of the bonds, as provided for herein, there shall be taken up and cancelled a like principal amount of the bonds refunded, together with all accumulated interest on such bonds thereby refunded, as well as all unmatured coupons thereto attached. No bonds herein authorized shall be issued until a like principal amount of the 5% bonds herein referred to have been tendered in exchange for a like principal of the amount of the bonds herein authorized.

> This resolution shall not be construed as authority for increasing the principal amount of the road and bridge bond indebtedness of said county, but shall be construed as authority for converting the present outstanding indebtedness of said county into refunding bonds for the hereinabove purpose."

With the facts as above stated, and proof taken on the issues raised by answer, the court upon consideration adjudged substantially as follows:

(2) That the original issue of $300,000 of road and bridge bonds, at the dates of issue, and the alleged $258,000 outstanding bonds of the various issues, constitute a valid obligation of the county, within every statutory and constitutional limitation applicable to the county's indebtedness.

(3) Fulton County has the authority to issue $258,000 of 4 per cent road and bridge refunding bonds for the purpose of retiring a like principal amount of the issued 4 per cent road and bridge bonds.

(5) That when said $258,000 4 per cent road and bridge bonds are executed, issued and exchanged in accordance with the resolution set out in the petition, said bonds will constitute a legal and binding obligation of the county according to their import and within every constitutional and statutory limitation.

In brief, appellant's counsel states as his only ground for reversal "the objections raised by the bondholders, is that all the bonds proposed to be refunded are not yet due." They insist that bonds cannot be refunded unless these bonds are either past due, or subject to call. Reliance is had solely on a syllabus taken from Russell v. Fiscal Court of Boyd County, 274 Ky. 377, 118 S. W. (2d) 757:

> "A county has no authority to issue renewal road and bridge bonds before those to be renewed are payable or can be called and paid."

It is not shown that the original issues of bonds were subject to call. Of course, it is made apparent that the greater portion of the $258,000 of bonds remain outstanding, and not yet matured. Bonds of the character here in question, that is, the first issue, are

ordinarily subjected to call by their terms, generally after a stated period. But this argument has no place here. In the Russell case the purpose was to issue all the bonds at one time, and hold the proceeds in a sinking fund for the purpose of refunding those yet to become due; it was shown that this might result in the county having to pay a relatively small amount of excess or duplicate interest, though the sum of money it would otherwise be required to spend in case of default would be larger. However, we found from a consideration of the facts that the plan proposed, if carried out, would result in an increase of the principal debt by $33,000, beyond that voted by the people.

Such is not the case here, if the plan proposed be strictly (as it must be) adhered to. The last year's maturity of the original bonds is 1955; the last of the proposed issue is in 1958. The original bonds bear 5 per cent interest. The proposed issue is to bear 4 per cent, so it may be seen there will be no excess or duplicate interest if the set-up be carried out.

It is noted in that case we held that the issue of bonds to take up those which had matured, and interest past due, and "which will become due on July 1, 1938" (the opinion was written on June 24, 1938) is valid. In that case we also wrote:

"Of course, it would follow that were the proposed refunding bonds issued as of the dates the other bonds respectively become due they would be valid, for in that event increasing the debt and duplicating the interest would be avoided."

So, it would logically follow that a total of $37,000 in refunding bonds may be issued under the Russell and other decisions.

The case cited above is otherwise no authority in the instant case, since no new bond shall be issued or delivered until a bond of like principal amount is tendered for cancellation. This takes the place of any "call."

The case of First & Peoples Bank v. City of Russell, 279 Ky. 849, 132 S. W. (2d) 304, decided since the Boyd County case, supra, seems conclusive of the question here; it cites and distinguishes the Boyd County

case, supra, and in doing so distinguishes the instant case.

The ordinance involved in the City of Russell case provided for the issuance of $18,000 of bonds for the purpose of extending and repairing the water system. This was amended later by providing for the issuance of $28,000 in bonds for the retiring of the original issue of waterworks bonds. By the terms of the ordinance it was provided that the last mentioned ($28,000) bonds should not be sold unless and until it becomes "certain there is a deficit, and, as such deficits occur from time to time, a sufficient portion of the bonds shall be sold to pay the deficits, and that they should be sold only so as to commence to bear interest simultaneously with the end of the obligation to pay interest under the bonds which they are to pay. The purpose of this provision was to meet the objection this court pointed out in the case of Russell v. Boyd County [supra], in which it was held that a county could not issue bonds to fund an anticipated deficit. * * * It was also pointed out that were the proposed refunding bonds issued as of the dates the other bonds respectively came due, they would be valid, for in that event increasing the debt and duplicating the interest would be avoided. It thus appears that the objections pointed out in that case are adequately met and answered by the present ordinance, since the bonds to be issued are only to bear interest from the time they are used to fund the maturity bonds of the previous issue, and that they are not to be sold until and as the deficits occur."

We reversed the City of Russell case for reasons set out in the opinion, one of which has some application here, since it was there found that the rights of bondholders might be seriously affected since the same property, or the revenue therefrom, were pledged for both the debt, and the refunding bond debt, and prior bondholders were not adequately represented.

We are of the opinion that the present case must necessarily be reversed, because of lack of adequate representation. The defendant named in the caption of the petition is B. G. Hale; his name does not appear in the body of the petition; he is not sued as a citizen, voter, resident or taxpayer of Fulton County. He is

not shown to have any interest in the outcome of the litigation, and not identified as a bondholder. His answer fails to manifest his right to defend in an individual capacity, or as being of a class; there should be named a defendant who manifests some tangible interest in the subject matter.

This may be cured on a remand of the case, and it is suggested that it would be proper to name as a defendant an objecting bondholder, and a resident taxpayer. On the questions raised solely by the answer of defendant as to the validity of the original issue of bonds, reference may be had to Jones v. Fulton County, 275 Ky. 619, 122 S. W. (2d) 510; Whitworth v. Breckinridge County Board of Education, 276 Ky. 346, 124 S. W. (2d) 495, which with others therein referred to seem to be conclusive of the objections set out in Hale's answer.

It is suggested that in order to remove any doubt of the meaning thereof, section 7 of the resolution should be particularly emphasized in section 5 of the chancellor's judgment.

In conclusion we are of the opinion that the judgment of the lower court correctly defined the rights of the parties, and if the same status exists and prevails after adequate defense representation is manifested, we agree with the chancellor that the proposed issue of bonds constitutes a valid obligation of Fulton County.

Judgment reversed for proceedings consistent with this opinion.