## Epley et al. v. Kentucky County Debt Commission et al.

June 21, 1940.

William B. Ardery, Judge.

Woodward, Dawson & Hobson for appellants.

Hubert Meredith, Attorney General, and A. E. Funk, Assistant Attorney General, for appellees.

Opinion of the Court by Judge Tilford—Affirming.

McLean County, pursuant to an election held in August, 1923, issued road and bridge bonds of the par value of $210,000, dated September 1, 1923, bearing 5% per annum interest, and maturing serially over a period extending to September 1, 1952. Notwithstanding the levy of the maximum tax of 20c per $100 valuation to create a sinking fund for the payment of principal and interest, the revenue derived proved insufficient for that purpose. At the time of the institution of these proceedings some of the bonds had matured and the county was without funds with which to pay them and at the same time to pay the interest due on the entire series. To meet this situation the Fiscal Court of McLean County at its regular meeting held on February 6, 1940, adopted a resolution to issue refunding bonds, reciting that bonds of the par value of $45,000 of the original issue were past due and in default; and that the majority of the holders of the outstanding bonds totalling

$185,000 would be willing to exchange them for refunding bonds maturing February 1, 1968, and bearing 4% per annum interest, provided that upon the happening of certain contingencies in the resolution set forth, they should receive 5% per annum. The resolution accordingly provided:

"That $185,000 of the present outstanding Road and Bridge Bonds be renewed by issuing to the present holders thereof and in exchange therefor Road and Bridge Renewal Bonds bearing interest at the rate of 4% per annum," * * * except that "In the event the income of this County available for Road and Bridge Bond retirement in any year amounts to as much as 25% more than the income available for such purposes during the fiscal year 1937-1938, said Renewal Bonds shall bear interest at the rate of 5% per annum for the fiscal year immediately following the fiscal year in which such increased income is available."

The resolution recited that the renewal bonds should be issued in denominations of $1,000 each, dated June 1, 1938, and callable at par and accrued interest on certain specified dates. Pursuant to the provisions of the County Debt Act enacted at the first extra session of the 1938 Legislature (Section 938q-1 et seq., Kentucky Statutes Supp. 1939) the approval of the State Local Finance Officer was sought, and, after hearings, obtained upon the following conditions: (1) That the proposed provision for the payment of 5% per annum interest under certain conditions be eliminated, and in lieu thereof that it be provided that 5% per annum interest should be paid only for years succeeding years during which the income to the sinking fund exceeded $12,000; and, (2) "that should the holders of less than one hundred per cent (100%) of the presently outstanding bonds tender them in exchange for renewal bonds, all funds now on hand and which may hereafter accrue to the county for the purpose of paying principal and interest on voted road and bridge bonds shall be prorated between the holders of the unexchanged bonds and of the renewal bonds, and that two separate sinking funds shall be maintained, one for the payment of interest on and principal of the unexchanged bonds, and one for the payment of interest on and principal of the re-

newal bonds, together with accrued interest on the bonds tendered for exchange and cancellation. Proration shall be on the following bases: (a) From the funds now on hand an amount sufficient to pay all interest accrued to the last interest payment date preceding the date of exchange shall be set aside, and all such interest due on the unexchanged bonds shall be allocated to the sinking fund for their amortization, and all due on the bonds tendered in exchange for renewal bonds shall be allocated to the sinking fund for their amortization; (b) The residue of the funds remaining on hand in the sinking fund, and all revenues which hereafter accrue to the county for the purpose of paying principal and interest on voted road and bridge bonds, shall be allocated to the sinking funds for amortizing the unexchanged and renewal bonds in the same ratio which the par principal amount of each, as of the date the exchange is completed, bears to the par principal amount of both.''

The Attorney General approved the plan recommended by the State Local Finance Officer, but the appellant, Epley, a protesting resident taxpayer, appealed to the County Debt Commission which affirmed the decision of the State Local Finance Officer and granted an appeal to the Franklin Circuit Court in the manner provided for in the act referred to. In the proceedings in that court the appellant, Carl Fischer, filed an intervening petition in his own behalf and in behalf of all other bondholders similarly situated, in which he asserted that he was the owner of bonds of the original issue of the par value of $9,000 which matured on September 1, 1936, and that he was entitled to payment of principal and interest in full before provision was made for the payment of unmatured bonds. Accordingly, he specifically attacked the provisions ''A'' and ''B'' of the order of the State Local Finance Officer heretofore quoted. The court approved the requirements and findings of the State Local Finance Officer and the Commission; adjudged that refunding bonds issued pursuant to these requirements would be valid, legal, and binding obligations of McLean County; that the appellant, Fischer, was not entitled to priority of payment; and that the monies in the sinking fund should be pro-rated among the holders of all bonds. This appeal followed.

Three specific objections to the validity of the pro-

posed issue are urged, the first of which is that the provision that under certain conditions the bondholders may receive 5% per annum interest instead of 4% violates Section 938q-6, Kentucky Statutes Supp. 1939, which requires that the maximum interest rate be specified. However, we are unable to find any merit in this contention, since 5% per annum is the maximum which may be paid upon the refunding bonds under any· circumstances, and this fact is made entirely clear by the order of the Fiscal Court authorizing the issue. Another of appellant's objections to the validity of the refunding bonds is that the bonds of the original issue are not callable and that the majority of them have not matured. This objection is predicated upon the decision of this court in the case of Russell v. Fiscal Court of Boyd County et al., 274 Ky. 377, 118 S. W. (2d) 757, in which we condemned a plan for the issuance of refunding bonds which contemplated their sale in order to raise funds with which to retire the unmatured as well as the matured bonds of the original issue. The vice of that transaction was that it increased the principal indebtedness and required payment of interest on the increase concurrently with the payment of interest on the outstanding bonds. In the present case the refunding bonds are to be issued only in exchange for, and upon the cancellation of, bonds of the original issue, and will bear interest only from the date of issuance. Hence, there would be neither duplication of interest payments nor increase of principal indebtedness, the factors which rendered ·invalid the refinancing plan presented in the Russell case, supra. First & Peoples Bank et al. v. City of Russell, 279 Ky. 849, 132 S. W. (2d) 304; Hale et al. v. Fiscal Court of Fulton County, Ky., 282 Ky. 475, 138 S. W. (2d) 937; Id., 283 Ky. 599, 142 S. W. (2d) 115.

The remaining and major objection urged by the appellant, Fischer, to the plan under consideration is the requirement that the available funds for Road and Bridge Bond retirement be prorated between the holders of unexchanged bonds and the holders of the renewal bonds, and that two separate sinking funds be maintained, the exact language of which requirements has been heretofore set forth. In practical operation the plan will require the application of the available funds, approximately $40,000, to the payment of the matured interest coupons of the original issue, thus postponing

the payment of the principal of the defaulted bonds and defeating the asserted right to priority. If, by their terms, the bonds of the original issue were entitled to priority of payment in the order of their maturity, the contract thus created would have been enforceable regardless of the consequences to the holders of the unmatured bonds; and, in the absence of specific contract priority, it is suggested that such a contract is inferable from the fact that the bonds bear different maturity dates, thus creating the expectancy in the purchasers that those of an earlier maturity would in all events be paid first.

Although the conflict between the authorities relied upon by the appellant, Fischer, and the many authorities holding that available funds, in cases of deficiency, should be pro-rated among all of the bondholders, is irreconcilable, it may in a measure be explained by the distinction sometimes drawn between a fund which represents the proceeds of an inexhaustible power of taxation and a fund, the sources of which are limited. As said by the author of the extensive annotation found in 90 A. L. R., beginning at page 717:

"The distinction seems to be sound under the assumption that the inexhaustible power of taxation is not merely theoretical, but in fact capable of producing sufficient revenue to pay, sooner or later, all other like creditors in full."

With reference to the distinction, the Attorney General, in his brief on behalf of the appellees, points out that there is not an inexhaustible power of taxation available for the payment of the bonds in question, since, by the provisions of Section 157a of the Constitution, the fund out of which they may be paid is limited to the proceeds of a levy of 20c on the $100 of the assessed valuation of property in the county, and the county cannot be compelled to appropriate for the payment of the interest or principal of the bonds any part of the State Aid Road Fund or any part of the 50c General Purpose Tax authorized by Section 157 of the Constitution. Bird v. Asher, 170 Ky. 726, 186 S. W. 663.

But regardless of the soundness of the distinction contended for, or whether the available power of taxa-

tion may be considered inexhaustible within the proper meaning of that distinction, the principle that equality is equity dictates the approval of the plan which, while deferring payment in full to some, insures, within the limits of human foresight, the ultimate payment in full to all. Many authorities supporting the conclusion which we have reached could be cited, but we deem it unnecessary to burden this opinion with a further reference to them. Some of them will be found in the annotation heretofore referred to and in our opinion in the case of The Maccabees et al. v. City of Ashland, 270 Ky. 86, 109 S. W. (2d) 29, in which this court held that where there was a threatened deficiency in the funds ultimately realizable for the payment of municipal street improvement bonds, the funds available on a given date prior to the maturity of the entire series should be pro-rated among all of the bondholders rather than applied to the payment of the bonds which had matured.

Judgment affirmed.