## Shaw v. Fiscal Court of Graves County et al.

Nov. 5, 1941.

L. R. Smith for appellant.

Webb & Webb and Aubrey Hester for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The Fiscal Court of Graves County, Kentucky, brought this action pursuant to the provisions of Section 186c-6 et seq., of the Kentucky Statutes, 1936 revision, to determine the right of the Fiscal Court of Graves County to issue refunding road and bridge bonds. The facts are, in substance, these:

In April, 1925, a petition was filed in the Graves County Court, as required by law, asking that an order be made to submit to the voters of Graves County the

proposition of whether they were in favor of issuing $400,000 in bonds for the purpose of building roads and bridges. Pursuant to the petition an election was held on August 1, 1925, and resulted in a majority voting in favor of the proposition. Subsequent steps and proceedings as required by law were had and in February, 1926, the Fiscal Court authorized the issuance of and did issue $150,000 of these bonds bearing interest at the rate of 5% per annum, bearing date March 1, 1926, and maturing March 1, 1949. Thereafter, on May 21, 1927, the Fiscal Court issued and ordered sold the residue of the authorized issue of bonds, $250,000, of the same nature and effect as the previous bonds and maturing on the same date.

At the time of the election, issuance, and sale of the bonds, the property assessed for taxation in Graves County in 1924 for 1925 taxes, and the assessed value of July 1, 1925, for 1926 taxes, was of sufficient value to authorize the issuance of such bonds under the provisions of Section 157a of the Constitution of Kentucky, and also to produce a sinking fund to pay the bonds at maturity with interest thereon under the county special levy of 20c per $100 of the assessed value of taxable property.

After the bonds were issued the assessed valuation of property in Graves County depreciated. It appears, however, that the county was able to take care of the interest and maturing bonds out of the 20c tax rate until 1934 at which time the General Assembly of Kentucky enacted the Sales Tax Law which provided additional funds to the counties of the state for road and bridge purposes, and the 20c tax rate supplemented by the sales tax fund enabled the county to pay the interest and maturing bonds until March 1, 1941, on which date 24 of the bonds, aggregating $24,000, matured. It appears that the county was able to pay only 21 of the maturing bonds, or $21,000, thus defaulting in payment of 3 of the bonds or $3,000, March 1, 1941, which bonds are yet unpaid.

It appears that $24,000 of the bonds will mature March 1, 1942, and the interest to be paid September 1, 1941, and March 1, 1942, will amount to $10,250, aggregating $34,250. It is further shown that under the last assessed valuation of property, not taking into consideration the cost of collection and delinquents, the total

tax that could be anticipated by March 1, 1942, would be $28,995 and, therefore, there necessarily will be bonds in default of $7,000 or $8,000 March 1, 1942.

We are convinced from the facts established by the evidence that the anticipated default in respect of March 1, 1942, is certain, and further, that a like default for succeeding years is reasonably certain unless assessed valuation of property in Graves County should greatly increase.

Because of the existing default of $3,000 and the anticipated default March 1, 1942, and the apparent continuing default of approximately the same amount in the succeeding years until maturity of the bonds March 1, 1949, the Fiscal Court of Graves County on August 12, 1941, adopted a resolution providing for the issuance and sale of 92 bonds of $1,000 denomination, bearing 4% interest, to refund or pay the present $3,000 deficiency and to meet anticipated defaults as indicated above. The resolution set out the proceedings of the county and the Fiscal Court with reference to the holding of the election and the issuance of the previous bonds. This issue apparently was raised for the purpose of testing the validity of the $400,000 bond issue now proposed to be refunded.

Without encumbering this opinion by detailing the steps taken and the evidence relating thereto, it suffices to say that we have examined the record and evidence relating to the authorization, issuance, and sale of the said bonds and find that they were issued strictly in accordance with the provisions of Section 157a of the Constitution and other applicable constitutional and statutory provisions. We conclude, therefore, that said bonds are valid and are now, except what has been paid, outstanding valid obligations of Graves County.

The resolution of August 12, 1941, also set out the assessed valuation of the property in the county for 1940 and 1941 and all other facts necessary to show that future defaults may reasonably be expected. The Fiscal Court recognized that it could not issue new bonds that would increase the amount of the indebtedness, nor could it issue bonds that would result in a duplication of interest on the old and new bonds, and to avoid these vices, the resolution provided that the $92,000 new bonds be issued to mature after the maturity of the old bonds;

that is, to mature 19 of the bonds or $19,000, March 1, 1950; $20,000 March 1, 1951; $20,000 March 1, 1952; $21,000 March 1, 1953, and $12,000 March 1, 1954. Such maturity dates of the new bonds would be within the constitutional limitation of 40 years. Fiscal Court of Estill County v. Debt Commission of Kentucky et al., 286 Ky. 114, 149 S. W. (2d) 735.

As a further guard against duplication of interest and increase of indebtedness, and to protect the county and taxpayers against the possibility of the new bonds falling into the hands of innocent purchasers, the resolution provided that the interest on the 92 new bonds shall be payable semi-annually, September 1 and March 1 of each year, and providing for the sale of such bonds under sealed bids to the highest bidder for not less than par and accrued interest; that none of these bonds shall be delivered to the purchaser at the time of the sale but all of them shall be placed in escrow in the First National Bank, Mayfield, Kentucky, as escrow agent; that upon the sale and delivery of these bonds the escrow agent will deliver to the purchaser three of the bonds upon the purchaser paying to the treasurer $3,000 with interest that has accrued upon such $3,000 to the date of delivery. It is further provided that if the bonds are sold for a premium then the purchaser will pay when such bonds are delivered one ninety-second of such premium on these bonds. This $3,000 is for the purpose of paying the $3,000 now in default.

The resolution further provides that the escrow agent will hold in escrow the residue of the new bonds until March 1, 1942, at which time, if the sinking fund is insufficient to then pay all of the old bonds and interest due at that time, the purchaser of the new bonds shall pay the treasurer the amount of such default in bonds with one ninety-second of the premium that may have been paid on such bonds, and the escrow agent will detach from such new bonds then so due to be delivered to the purchaser, all past-due interest coupons so that such bonds so delivered would only bear interest from the date of delivery and that the proceeds of such payment made at the time shall be turned over to the treasurer and by him placed in the road and bridge bond sinking fund account to be used in paying the defaulting bonds, and that annually thereafter the same proceeding shall be had in the event there are defaulting old bonds, but

that in no event will there be delivered to the purchaser more new bonds than are ncessary and sufficient to pay such defaulting old bonds at that time.

It is further provided that upon maturity of the rest of the original or old issue of bonds on March 1, 1949, or if all or any of these refunding bonds had not been needed with which to pay maturing bonds, then the escrow agent will deliver to the Fiscal Court such refunding bonds as have not been used, and the same, with coupons attached, will be destroyed. The form of the bonds is copied into the resolution and carries with it the provision that these bonds are only to be used for paying such maturing old bonds, and the resolution and order is referred to in the bonds by book and page of the Fiscal Court thereby giving notice to any purchaser of the bonds or any person into whose hands they might come, that the bonds are subject to the resolution and order of the Fiscal Court and are to be sold, disposed of, and delivered in the way and manner, and for the purpose only, as set out in the resolution.

The resolution further provided that the escrow agent is required to enter into contract with the Fiscal Court that it will comply with all the orders, stipulations, and requirements of the resolution; that the purchaser of the bonds shall be worth the full amount of the bond issue so that it might be required to comply with its contract in the purchase of the bonds, and that it will accept and pay for the same as they might be needed under the requirements of the order and resolution of the Fiscal Court; that the escrow agent is required to deliver the bonds in numerical order and only a sufficiency of the same at any time that may be needed to take care of any defaulting old bonds. It is further provided that before the issuance of the new bonds their validity should be determined by a court of competent jurisdiction as is required by Section 186c-6 et seq., Kentucky Statutes.

The Fiscal Court, as plaintiff below, named L. S. Shaw as party defendant to the action and it was agreed between the parties, and so ordered by the court, that L. S. Shaw defend the action in behalf of himself and all other citizens and taxpayers of Graves County. The action was brought under the provisions of the Declaratory Judgment Act. The issues were made and the case submitted to the chancellor upon the pleadings, orders,

exhibits and resolutions of the Fiscal Court, and the chancellor ordered and adjudged, in substance, that a controversy existed between the parties and that they were entitled to have the same adjudicated; that the bond issues of $150,000 and $250,000 respectively, pursuant to the election held in 1925, were valid; that all the bonds so authorized were issued and sold and have been paid except $208,000 which is a valid indebtedness of Graves County; that by reason of the depreciation of the taxable property of Graves County the collection of the 20c tax rate was not sufficient to retire all the bonds due March 1, 1941, and that $3,000 of such bonds did default and are still in default and that there would not be sufficient funds March 1, 1942, to pay all the outstanding bonds and interest thereon, or to take care of such bonds and interest in full in the future as same might become due and payable.

The court further adjudged that the resolution of the Fiscal Court of August 12, 1941, authorizing the issuance of the $92,000 refunding bonds was legal, and when such bonds are issued pursuant thereto they will be valid and enforceable obligations of the county for the purposes therein stipulated. The court further adjudged that the Fiscal Court had the right and authority to issue the $92,000 refunding bonds and sell the same and use the proceeds in retiring a like principal amount of the present outstanding 5% road and bridge bonds. Briefly stated, the judgment further provided that the Fiscal Court may issue and sell the proposed refunding bonds in the way and manner and for the purposes provided in the resolution.

We have stated in a previous part of this opinion that the $400,000 road and bridge bonds issued pursuant to the 1925 election were valid. This leaves for consideration only the question of the validity of the issuance of the refunding bonds as provided for in the resolution.

In Epley et al. v. Kentucky County Debt Commission et al., 283 Ky. 600, 142 S. W. (2d) 116, it was held that the issuance of bonds by a county to refund road and bridge bonds was not invalid because original bonds were not callable and the majority of such bonds had not matured, where refunding bonds were to be issued only in exchange for and upon cancellation of original bonds, and such refunding bonds would bear interest

only from date of issuance, since there would be neither duplication of interest payments nor increase of principal indebtedness. Kentucky Statutes, 1939 Supp., Section 938q-1 et seq. See to the same effect, Hale v. Fiscal Court of Fulton County et al., 282 Ky. 475, 138 S. W. (2d) 937; Russell et al. v. Fiscal Court of Boyd County, 274 Ky. 375, 118 S. W. (2d) 756.

In the case at bar it is to be noted that the refunding bonds proposed to be issued are not to be delivered to the purchaser nor draw interest until after due date, cancellation, and payment of the previous bonds out of the proceeds of the sale of the new or refunding bonds, and hence, there will be no duplication of interest on the old and new bonds nor will the original indebtedness be increased. This is in harmony with the authorities, supra.

In Fiscal Court of Estill County v. Debt Commission of Kentucky et al., 286 Ky. 114, 149 S. W. (2d) 735, it was held that refunding bonds may be issued for a period not exceeding the constitutional limitation of 40 years. In the case at bar, the last maturing refunding bonds proposed to be issued matures within 13 years after the issuance thereof authorizing the issuance of the original bonds, and less than 29 years from the issuance thereof, thus keeping within the constitutional limitation.

In Holt et al. v. City of Covington, 286 Ky. 727, 151 S. W. (2d) 780, 782, the ordinance providing for the issuance of refunding bonds was in most respects like the resolution of the Fiscal Court involved in the present case, except, however, the plan devised in the ordinance would result in a duplication of interest on old and new bonds and for that reason we held the plan invalid. It is further said in that opinion, however:

"We do not hold that a sale of bonds to refund another issue may not be held a reasonable time in advance of the maturity of the issue to be refunded. On the contrary this may be done provided the proposed issue bears interest from a date not earlier than the maturity of the issue to be refunded and provided the purchase price is payable on such maturity."

As we have previously said, the vices of duplication of interest, increase of principal or original indebted-

ness, and the extension of the time of indebtedness beyond the constitutional limitation, have been carefully avoided and eliminated in the resolution of the Fiscal Court now under consideration. We find nothing in the resolution which tends to offend any constitutional or statutory provision relating to the subject matter.

We conclude, therefore, that the Fiscal Court of Graves County has the right and authority to issue the bonds proposed in the resolution to be sold, delivered, and the proceeds thereof used in accordance with the provisions of the resolution. We may add further that such plan is not only valid but is a very commendable one, since it enables the county to meet its legal obligations and to preserve its credit, without any harm or injustice resulting to the taxpayers or other parties concerned.

For the reasons stated, the judgment is affirmed.