89

**T. A. PARDUE etc., Appellant,**

v.

**KENTUCKY SAVINGS BOND AUTHORI-TY etc., Appellee.**

Court of Appeals of Kentucky.

Oct. 25, 1974.

Amos H. Eblen, Eblen, Howard & Milner, Lexington, for appellant.

Jo M. Ferguson, Grafton, Ferguson, Fleischer & Harper, Louisville, for appellee.

STEPHENSON, Justice.

Franklin Circuit Court entered judgment holding Chapter 293, Kentucky Revised Statutes, to be valid. T. A. Pardue appeals. We affirm.

The 1972 General Assembly enacted the Kentucky Savings Bond Authority law, now compiled as Chapter 293 of Kentucky Revised Statutes, creating the "Kentucky Savings Bond Authority" as an independent agency of government to be directed and guided by seven commissioners. The bond authority is empowered to sell and issue savings bonds which will mature in not more than 15 years in various denominations, none to exceed $10,000 or to be less than $100. These savings bonds are non-coupon bonds similar to the Series E Bonds issued by the United States Government.

The savings bonds are payable from a special fund called the Payment and Redemption Fund and are declared not to be obligations of the Commonwealth. The Payment and Redemption Fund receives the proceeds from the sale of savings bonds which are to be invested in bonds and notes issued by the Commonwealth or one of its agencies. The bonds and notes so purchased will not be cancelled or retired but will be held by the bond authority and the interest thereon collected and allocated to the Payment and Redemption Fund or the operating fund in the discretion of the bond authority. All payments of principal of bonds and notes held by the Bond Authority are to be deposited in the Payment and Redemption Fund. The Act further requires that the investments be made in Kentucky state bonds, which bear a higher interest rate than the savings bonds that are the source of the funds. This difference will of course produce a

"profit" to the bond authority, which is required after establishing any necessary reserves to turn the "profit" over to the treasurer of the Commonwealth, thereby, in effect, reducing interest costs to the Commonwealth or its agencies for any bonds held in the investment portfolio of the bond authority for the period of time so held.

A declaratory judgment proceeding was instituted in the Franklin Circuit Court by and on behalf of the bond authority for the purpose of testing the validity of the enactment creating the Kentucky Savings Bond Authority. T. A. Pardue, Frankfort, Kentucky, was made a party defendant as an individual resident and taxpayer and as a representative of all citizens, residents, and taxpayers. The trial court made findings of fact and conclusions of law and entered a judgment holding as follows:

"(1) The issuance and sale of Savings Bonds under the terms of Chapter 293 of the Kentucky Revised Statutes will serve a public purpose;

"(2) The issuance and sale of Savings Bonds tends to accomplish for temporary periods at least one of the purposes of refunding outstanding bonds, in that a reduction in interest rate to the State is achieved for the period during which the outstanding bond is held by the Kentucky Savings Bond Authority;

"(3) The Savings Bonds will be revenue bonds and will not be direct obligations of the Commonwealth;

"(4) The statute permits the Kentucky Savings Bond Authority to prescribe the terms of sale of the proposed Savings Bonds, and in view of the fact that each Savings Bond will be issued upon the same basis during the same period of time to all purchasers, no bidding for such Savings Bonds will be necessary or possible;

"(5) The Kentucky Savings Bond Authority, on behalf of the Commonwealth, may pledge not to impair the contract entered into by and between the Authority on the one hand, and each purchaser of a Savings Bond on the other hand, until the obligation represented by said Savings Bond is fully met, paid and discharged;

"(6) The Authority may provide that the Savings Bond be sold at a discount and without periodic payment of interest, and such discount shall be deemed and treated as interest earned on the Savings Bond during the period when it is outstanding;

"(7) The interest earned as a result of purchase at a discount shall be deemed to be tax-exempt income;

"(8) The Authority may borrow up to $1,000,000 as permitted by Chapter 293 of the Kentucky Revised Statutes for the purpose of commencing operations, and it may issue its interest bearing note or notes in evidence of such borrowing;

"(9) The borrowing permitted for 'start-up' purposes shall be repayable from the proceeds of the sale of Savings Bonds as an exception to the provisions of subsection (3) of KRS 293.130 which provide that such proceeds otherwise would be allocated to the payment and redemption fund or to the operating fund established by the statute."

Out of the issues resolved by the trial court, the appellant contends that the operation of the bond authority will not serve a public purpose; that the sale of the bonds will constitute a direct obligation of the Commonwealth in violation of §§ 49 and 50 of the Kentucky Constitution; and that the provisions of the Act delegate legislative authority in violation of the Constitution of Kentucky.

■ The stated purpose of Chapter 293, Kentucky Revised Statutes, is to promote investment by the general public in bonds of the Commonwealth and to reduce interest costs to the Commonwealth or its agencies. We are of the opinion that the stated

purpose of the Act and the prescribed operations of the bond authority serve a public purpose. Carman v. Hickman County, 185 Ky. 630, 215 S.W. 408 (1919); Shaw v. Fiscal Court of Graves County, 288 Ky. 215, 155 S.W.2d 856 (1941); and Hemlepp v. Aronberg, Ky., 369 S.W.2d 121 (1963). Hemlepp held that liquidation of indebtedness at a lower interest rate is a legitimate public purpose.

The appellant argues that the operation of the bond authority will produce "profit" to the agency, a money-making venture which does not serve a public service. The bond authority argues that the "profit" produced is a "saving" to the Commonwealth. It seems to us that the stated purpose of the Act is abundantly clear, and it is not useful to turn the finding of public purpose on semantics. It is clear that the operation of the bond authority does serve a public purpose regardless of how we denominate the result of the operation.

As to appellant's argument that the issuance of the savings bonds by the bond authority may constitute a general obligation of the Commonwealth in violation of the Kentucky Constitution, suffice to say that the Act creating the bond authority declares the bonds not to be obligations of the Commonwealth. Each bond shall state on its face that it does not constitute a debt of the Commonwealth (KRS 293.130), and we conclude that the bonds are revenue bonds and not a direct obligation of the Commonwealth.

Finally, the appellant argues that the language of KRS 293.130 "that it will not limit or restrict the rights hereby vested in the authority to purchase, acquire, hold, sell or dispose of bonds deemed by the authority to be convenient or necessary to produce sufficient revenues to meet the expenses of operation of the authority, or to fulfill the terms of any agreement made with the holders of its savings bonds, and it further pledges not to impair in any way the rights or remedies of the holders of those savings bonds until the obligations set out therein are fully met, paid and discharged," contracts away a portion of the legislative power in that the language does not restrict the bond authority to the purchase of revenue bonds of agencies or to general obligation bonds of the Commonwealth.

The legislative intent is clearly enunciated in KRS 293.010, limiting the bond authority to investment in bonds of the Commonwealth or its agencies. The one exception is contained in KRS 293.130(2) which provides for temporary investment in tax-exempt municipal bonds if no bonds of the Commonwealth or its agencies are immediately available.

We construe the language of KRS 293.130 to be a covenant prohibiting the General Assembly from removing the security for savings bonds already issued, which is clearly permissible and a constitutional obligation. There is nothing in the Act which would prohibit a future General Assembly from barring the issuance of any further savings bonds. Cf. Kentucky Lake Vacation Land v. State Property and Building Commission, Ky., 333 S.W.2d 779 (1960), and White v. Common Council of City of Middlesboro, Ky., 414 S.W.2d 569 (1967).

The judgment is affirmed.

JONES, MILLIKEN, PALMORE, REED, STEINFELD and STEPHENSON, JJ., concur.

OSBORNE, C. J., does not concur.